[Cite as *State v. McRae*, 2020-Ohio-773.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-180669 |
| | | TRIAL NO. B-1701630 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| DAMION MCRAE, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  March 4, 2020

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Paula E. Adams*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Timothy J. McKenna,* for Defendant-Appellant.

**BERGERON, Judge.**

{¶1}    In the aftermath of a domestic violence altercation, the defendant-appellant Damion McRae shot at the two responding police officers who arrived to investigate the incident.  Mr. McRae managed to get one shot off before being disabled, and this shot struck one of the officers, seriously injuring him.  In the wake of convictions for attempted murder and other charges, Mr. McRae presents various challenges to his convictions and sentences on appeal.  For the reasons we discuss below, we ultimately affirm the trial court's judgment.

I.

{¶2}    Shortly after the clock struck midnight on March 12, 2017, Cincinnati police officers Kenneth Grubbs and William Keuper responded to a call concerning an incident at a nearby apartment complex.  One of the complex's residents, Ebony Berry, reported a domestic violence altercation perpetrated by her boyfriend, Mr. McRae.  Upon arriving at the complex, the officers parked their vehicle and then split up, with Officer Grubbs proceeding directly through the complex's central courtyard, while Officer Keuper ventured around the complex before entering the courtyard from the side.

{¶3}    As they converged in the courtyard, Officer Grubbs noticed an individual matching the suspect's description on the far side of the courtyard; and indeed this proved to be Mr. McRae.  Approaching Mr. McRae, Officer Grubbs experienced a growing sense of unease, noticing that one of Mr. McRae's hands was hidden in his jacket pocket with the other hand angled behind his back, obscuring it from view.  As this scene unfolded, Officer Keuper had fallen in a few steps behind Officer Grubbs.  Officer Grubbs, glimpsing a gun's magazine behind Mr. McRae,

ordered him to show his hands. Instead of complying, however, Mr. McRae verbalized, "I don't have nothing on me," but then yanked out a 9 mm Kel-Tec rifle from behind his back. Raising the gun to hip level, Mr. McRae managed to fire off a single shot before the gun (miraculously) jammed.

{¶4} The bullet struck Officer Grubbs in the groin, causing him to backpedal away from Mr. McRae as he discharged his own weapon, eventually falling to the ground. Officer Keuper likewise fired at Mr. McRae, who can be seen in body-worn-camera footage fumbling on the ground, ignoring the officers' commands to put his hands up. Eventually, Mr. McRae placed his hands in the air and back-up arrived at the scene. Both Officer Grubbs and Mr. McRae were whisked away to the hospital to receive treatment for their respective gunshot wounds.

{¶5} In the wake of this incident, Mr. McRae was indicted on nine counts, including two counts of attempted murder, three counts of felonious assault, two counts of having a weapon while under a disability, one count of carrying a concealed weapon, and an assault charge for the initial domestic violence incident with Ms. Berry. Mr. McRae would later proceed to a bench trial, with the court finding him guilty of all charges. At sentencing, the court merged several of the counts, ultimately sentencing him for the two attempted murders, the two counts for having a weapon while under a disability, the concealed weapon charge, and the assault charge. Mr. McRae received an aggregate sentence of 43-and-a-half years in prison.

{¶6} Mr. McRae now appeals and raises five assignments of error. His first two assignments of error challenge the weight and sufficiency of the evidence underlying his attempted murder convictions. His other three assignments of error allege ineffective assistance of counsel, failure of the trial court to properly merge

3

allied offenses, and cruel and unusual punishment for the trial court's imposition of consecutive sentences.

II.

A.

{¶7}    In two interrelated assignments of error, Mr. McRae challenges both the sufficiency and weight of the evidence underlying his convictions for attempted murder.  While Mr. McRae also challenges the weight and sufficiency of the evidence with respect to his three felonious assault charges, he was never sentenced on those as they merged with the attempted murder counts at sentencing.  Thus, there are no judgments of conviction on those charges for purposes of appellate review.  *See State v. Hendrix*, 1st Dist. Hamilton Nos. C-150194 and C-150200, 2016-Ohio-2697, ¶ 42 ("[Defendant] was never sentenced on the felonious-assault charges, because they were merged with the attempted-murder charges, so [the defendant] cannot appeal the jury's findings with respect to the felonious-assault charges.").  Nor do we see where Mr. McRae challenges the weight and sufficiency of his other remaining convictions or the peace-officer specifications.  *See State v. Sanders*, 1st Dist. Hamilton Nos. C-140579 and C-140580, 2015-Ohio-5232, ¶ 41 ("Errors not argued in a brief will be regarded as having been abandoned.").  We accordingly address Mr. McRae's weight and sufficiency challenges as limited to the two convictions of attempted murder.

{¶8}    Examining the legal sufficiency of the evidence underlying Mr. McRae's convictions requires us to "examine the evidence admitted at trial in the light most favorable to the prosecution and determine whether the evidence could have convinced any rational trier of fact that the essential elements of the crime were proven beyond a reasonable doubt."  *Sanders* at ¶ 39.  By contrast, a weight of the

evidence challenge requires consideration of the entire record to determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way, resulting in a manifest miscarriage of justice warranting reversal. *Id.* at ¶ 34.

{¶9} The trial court convicted Mr. McRae on two counts of attempted murder, one relating to each officer. Attempt under R.C. 2923.02(A) proscribes purposely or knowingly engaging in an act, which if successful, would constitute or result in the offense. Relatedly, the murder statute prohibits the purposeful killing of another. *See* R.C. 2903.02(A). Therefore, in order to sustain Mr. McRae's convictions, the state needed to prove that Mr. McRae acted with a purpose to kill the officers that night in the courtyard. *See State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, 54 N.E.3d 80, ¶ 147 ("Attempted murder, like murder, requires a purpose to kill.").

{¶10} Mr. McRae essentially vacillates between two contradictory positions in an effort to defeat the requisite mens rea of "purposefully" with respect to Officer Grubbs, suggesting on the one hand that he accidentally discharged the firearm, while on the other hand insisting that the location of Officer Grubbs's wound confirms the lack of an intent to kill. Mr. McRae also takes issue with his attempted murder conviction as to Officer Keuper, professing a lack of awareness as to the officer's presence and emphasizing the fact that he was not actually struck by the bullet.

{¶11} We have recognized that a person acts purposefully when he specifically intends to cause a certain result. *See State v. Phillips*, 1st Dist. Hamilton Nos. C-150376 and C-150378, 2016-Ohio-4672, ¶ 16; R.C. 2901.22(A). Furthermore, a defendant's intent may be inferred from all the surrounding facts and circumstances of the crime. *See State v. Were*, 1st Dist. Hamilton No. C-030485,

2005-Ohio-376, ¶ 180, quoting *State v. Herring*, 94 Ohio St.3d 246, 266, 762 N.E.2d 940 (2002) ("Intent may be inferred from the circumstances surrounding the crime."). Particularly relevant here, "in an attempted-murder prosecution, a defendant's specific intent to kill another can be inferred from the defendant's shooting in the victim's direction" and is strongly corroborative of criminal purpose. *State v. MacDonald*, 1st Dist. Hamilton No. C-180310, 2019-Ohio-3595, ¶ 17-18; *Hendrix,* 1st Dist. Hamilton Nos. C-150194 and C-150200, 2016-Ohio-2697, at ¶ 44 (same). This flows from the fact that a gun is considered a "deadly weapon," and therefore its discharge in another's direction supports an inference that the shooter harbored the specific intent to kill. *See State v. Widner,* 69 Ohio St.2d 267, 270, 431 N.E.2d 1025 (1982) (noting that because a gun is an "inherently dangerous instrumentality" and its use is likely to produce death, a jury could conclude that the defendant formed specific intent to kill); *State v. Wilson*, 8th Dist. Cuyahoga No. 96098, 2011-Ohio-5653, ¶ 6 (same).

{¶12} Here, the state presented evidence that Mr. McRae discharged a gun in the officers' direction while both officers were in close proximity to him and within his line of fire. The bullet actually struck Officer Grubbs, and Officer Keuper testified that he initially believed he was shot. Moreover, the bullet traveled through Officer Grubbs, and thus it carried the potential to strike Officer Keuper, who was positioned immediately behind him. Indeed, footage from the officers' body-worn cameras confirms this positioning, with Officer Grubbs standing directly in front of Mr. McRae and Officer Keuper only steps behind him. This evidence strongly corroborates Mr. McRae's intent to kill and constitutes sufficient evidence for the trier of fact to conclude that he acted with the requisite purpose to kill. *See Hendrix* at ¶ 44 (evidence of attempted murder existed given proximity of victims to shots

fired at them); *State v. Bell*, 8th Dist. Cuyahoga No. 87769, 2006-Ohio-6592, ¶ 65 (sufficient evidence supported attempted murder conviction when testimony demonstrated that victims were in defendant's line of fire though not actually struck).

{¶13} For the same reasons, we reject Mr. McRae's claim that his convictions cannot be sustained because the bullet struck Officer Grubbs below the waist and Officer Keuper remained uninjured. In essence, he insists that he shot Officer Grubbs in a part of the body that was highly unlikely to be fatal. Leaving aside this commentary on Mr. McRae's marksmanship, to state this proposition is to refute it as the statute does not require a near-fatal injury to qualify. *See State v. Byrd,* 1st Dist. Hamilton No. C-050490, 2007-Ohio-3787, ¶ 39 (noting that attempt statute does not require that the victim sustain an injury from the attempted act of murder); *State v. Locklear*, 10th Dist. Franklin No. 06AP-259, 2006-Ohio-5949, ¶ 17 (same); R.C. 2923.02(A).

{¶14} As to the weight of the evidence, Mr. McRae relies heavily on his accident and "suicide by cop" theories to support this challenge. But the credibility of these theories was an issue for the trier of fact to determine in light of the evidence before it. *See State v. Salaam*, 2015-Ohio-4552, 47 N.E.3d 495, ¶ 14 (1st Dist.) (noting that the trial court is in the best position to make credibility determinations); *Hendrix,* 1st Dist. Hamilton Nos. C-150194 and C-150200, 2016-Ohio-2697*,* at ¶ 46 (same). While the state's witness, firearm examiner John Heile, conceded that an accidental discharge while raising the rifle might be possible, the trier of fact could find such a theory implausible based on the other testimony and evidence presented surrounding the circumstances of the crime. *See State v. Baron*, 1st Dist. Hamilton No. C-100474, 2011-Ohio-3204, ¶ 12 (trier of fact is free to reject defendant's theory

7

by finding state's witnesses more credible). And the credibility of Mr. McRae's explanation of the events suffered in light of other conflicting evidence in the record.

{¶15} Officer Grubbs's testimony indicated that Mr. McRae approached him in such a way as to conceal the rifle behind his back, that he repeatedly ignored the officer, and then affirmatively misrepresented his possession of two firearms to the officer in the moments before the shooting. Officer Grubbs's body-worn camera corroborates this, as Mr. McRae can be seen pulling the rifle out from behind his back and firing on the officer. Officer Keuper's body-worn camera captures the exchange between Mr. McRae and Officer Grubbs and the moment when Mr. McRae states that "I don't have nothing on me." As to Mr. McRae's contention that he simply never saw Officer Keuper, the officer's body-worn camera and other testimony established that the two were standing in close proximity in the complex's well-lit courtyard.

{¶16} Mr. McRae's girlfriend, Ms. Berry, whose 911 call precipitated these events, also told investigating officers that when she informed Mr. McRae that she planned to call the police, he responded "call whoever you wanna call, I'll shoot whoever, I wanna shoot, I don't care[.]" And when interviewed by police after the shooting, Mr. McRae at first claimed he remembered nothing about that evening, but then asked the officers to return the following day only to inform them that he remembered he wanted the officers to kill him, but he did not intend to kill them. Based on the foregoing, ample credible evidence existed from which the trier of fact could have rejected Mr. McRae's explanation of events, disregarding his claim that the gun went off accidently and that he only wanted to die.

{¶17} Simply because the trier of fact, here the judge, declined to view the evidence as Mr. McRae wished did not render the judgment against the manifest

weight of the evidence. *See State v. Carmen*, 1st Dist. Hamilton No. C-120692, 2013-Ohio-3325, ¶ 14-17 (court's rejection of defendant's affirmative defense was not against the manifest weight of the evidence). Ultimately, based on the record before us, we are unpersuaded that this is one of the rare instances in which the trier of fact lost its way, resulting in a manifest miscarriage of justice. Mr. McRae's convictions for attempted murder were supported by both the weight and sufficiency of the evidence.

B.

{¶18} In his third assignment of error, Mr. McRae posits that his trial counsel was constitutionally ineffective, principally because defense counsel failed to present expert testimony regarding his theory of accidental discharge of the rifle or expert testimony regarding his state of mind at the time of the shooting. To succeed on an ineffective assistance of counsel theory, Mr. McRae must demonstrate that (1) trial counsel's performance fell below an objective standard of reasonableness, and (2) that the deficient performance prejudiced him. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373 (1989).

{¶19} Particularly on direct review, we are generally reluctant to second-guess counsel's tactical decisions that could form part of a sound trial strategy. *Strickland* at 689. Because the decision not to bring expert testimony may be tactical, the decision of trial counsel to instead to rely on cross-examination of the state's expert does not equate to ineffective assistance of counsel on the record before us. *See State v. Thompson,* 141 Ohio St.3d 254, 2014-Ohio-4751, 23 N.E.3d 1096, ¶ 244, citing *State v. Nicholas*, 66 Ohio St.3d 431, 436, 613 N.E.2d 225 (1993) ("[W]e have recognized that ineffective assistance does not occur when counsel decides to

rely on cross-examination of the state's expert rather than calling a separate defense expert."). And here, trial counsel elected such a path, cross-examining Mr. Heile regarding accidental discharge of the Kel-Tec rifle at trial, thus arguably falling within the broad spectrum of reasonable assistance. *Id.* Moreover, Mr. McRae cannot demonstrate any prejudice from this decision. On cross-examination, Mr. Heile conceded that accidental discharge of the rifle was possible by raising the gun with one's finger on the trigger, ultimately lending credence to Mr. McRae's theory and undermining any claim of prejudice. *Thompson* at ¶ 245 (no prejudice where cross-examination of the state's expert did not contradict the defendant's theory).

{¶20} As to trial counsel's alleged failure to call an "expert on the defendant's mental health state," Mr. McRae suggests that the trial court needed to hear from an expert about his mental health and thought patterns that night, but fails to indicate what the expert would have testified to or how that testimony would have assisted him. *See State v. Stevens*, 2016-Ohio-446, 58 N.E.3d 584, ¶ 49-50 (3d Dist.) (no ineffective assistance for not calling defense expert when no indication of how that evidence would have affected the outcome of trial); *State v. Gann,* 154 Ohio App.3d 170, 2003-Ohio-4000, 796 N.E.2d 942, ¶ 58 (12th Dist.) (No ineffective assistance where "[t]he record not only fails to show *what* such an expert's testimony would have been but also that *any* such expert could have been called who would have been willing to testify favorably on [the defendant's] behalf.") (Emphasis sic.) Without any further precision on the contours of any such testimony, "resolving this issue in [Mr. McRae's] favor would be purely speculative." *See State v. Madrigal*, 87 Ohio St.3d 378, 390, 721 N.E.2d 52 (2000). Mr. McRae accordingly fails to demonstrate a reasonable probability that "but for" this purported error, the outcome of his trial would have differed. *Strickland* at 694.

C.

{¶21} Under his fourth assignment of error, Mr. McRae insists that the trial court erred by failing to merge the two attempted murder convictions pursuant to R.C. 2941.25 as allied offenses of similar import. R.C. 2941.25(A) explains "[w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." Conversely, R.C. 2941.25(B) allows a defendant to be convicted of all counts in an indictment where the defendant's conduct constitutes offenses of dissimilar import, or offenses of the same or similar kind committed separately or with separate animus. Mr. McRae maintains the record fails to demonstrate that the offenses here—the two attempted murders—were committed separately or with a separate animus, thus warranting merger. We apply de novo review to the trial court's determinations regarding merger under R.C. 2941.25. *See State v. Williams,* 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 1, 28.

{¶22} The application of merger prevents a defendant from being convicted and punished more than once for the same offense, but offenses cannot merge where: "(1) the offenses are dissimilar in import or significance—in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation." *State v. Ruff,* 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 25. And "[w]hen a defendant's conduct victimizes more than one person, the harm for each person is separate and distinct, and therefore, the defendant can be convicted of multiple counts." *Id.* at ¶ 26. In other words, when the conduct involves multiple victims, merger of the offenses would be improper. *See State v. Smith,* 1st Dist. Hamilton No.

11

C-180151, 2019-Ohio-5264, ¶ 85 (finding merger inappropriate where counts involved two separate victims). Because Mr. McRae's conduct victimized both Officer Grubbs and Officer Keuper, merger of the offenses would have been improper because the harm to each officer was separate and distinct. Therefore, the trial court did not err in sentencing Mr. McRae separately for each attempted murder charge.

D.

{¶23} In his final assignment of error, Mr. McRae challenges the trial court's imposition of consecutive sentences for an aggregate sentence of 43-and-a-half years. He submits that this subjects him to cruel and unusual punishment, violating the Eighth Amendment to the United States Constitution, which provides "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The Ohio Constitution provides a corollary protection. *See* Ohio Constitution, Article 1, Section 9.

{¶24} Invalidation of a sentence as cruel and unusual punishment, however, requires a showing that the sentence is "grossly disproportionate" to the crime, i.e., shocking to a reasonable person and the community's sense of justice. *State v. Hairston,* 118 Ohio St.3d 289, 2008-Ohio-2338, 888 N.E.2d 1073, ¶ 13-14, citing *State v. Weitbrecht*, 86 Ohio St.3d 368, 371, 715 N.E.2d 167 (1999). In addressing proportionality of a sentence for constitutional purposes, the Ohio Supreme Court emphasized that the focus remains on each individual term rather than the cumulative effect of imposing multiple sentences consecutively. *Hairston* at ¶ 20 ("[W]e conclude that for purposes of the Eighth Amendment and Section 9, Article I of the Ohio Constitution, proportionality review should focus on individual sentences rather than on the cumulative impact of multiple sentences imposed consecutively."). Thus, the fact that the trial court sentenced Mr. McRae to consecutive sentences does

not in itself constitute cruel and unusual punishment. *See State v. Williams,* 2017-Ohio-8898, 101 N.E.3d 547, ¶ 31 (1st Dist.) ("[T]he Eighth Amendment proportionality review does not apply to consecutive sentences.").

{¶25} And as to Mr. McRae's individual sentences, we do not see, nor does he challenge, that the imposition of any individual sentence was "grossly disproportionate" to the crime so as to constitute cruel and unusual punishment. To the contrary, each sentence imposed on Mr. McRae falls within the allowable terms provided by a valid statute enacted by the legislature, which carries a presumption that the punishment fits the crime. *See Williams* at ¶ 30 (noting that sentences falling within the term ranges allowed by a valid statute are not grossly disproportionate to the crime). Ultimately, because proportionality review turns upon review of each individual sentence, Mr. McRae's resulting 43-and-a-half-year sentence from imposition of consecutive sentences does not constitute cruel and unusual punishment.

{¶26} Having thoroughly considered each of Mr. McRae's assignments of error in light of the law and the record on appeal and based on the foregoing analysis, we overrule each of Mr. McRae's five assignments of error and affirm the judgment of the trial court.

Judgment affirmed.

**MOCK, P.J.,** and **ZAYAS, J.,** concur.

Please note:
    The court has recorded its own entry this date.