[Cite as *State v. Harper*, 2025-Ohio-2059.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

STATE OF OHIO,                          :         APPEAL NO.   C-240476
                                                  TRIAL NO.    B-2301418-A
    Plaintiff-Appellee,           :

  vs.                                   :
                                                  *JUDGMENT ENTRY*
ELIJAH HARPER,                          :

    Defendant-Appellant.          :


This cause was heard upon the appeal, the record, and the briefs.

The judgment of the trial court is affirmed for the reasons set forth in the Opinion filed this date.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs are taxed under App.R. 24.

The court further orders that 1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and 2) the mandate be sent to the trial court for execution under App.R. 27.


**To the clerk:**

**Enter upon the journal of the court on 6/11/2025 per order of the court.**


**By:**_____
       **Administrative Judge**

[Cite as *State v. Harper*, 2025-Ohio-2059.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. | C-240476 |
| | | TRIAL NO. | B-2301418-A |
| Plaintiff-Appellee, | : | | |
| vs. | : | | |
| ELIJAH HARPER, | : | *O P I N I O N* | |
| Defendant-Appellant. | : | | |


Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: June 11, 2025


*Connie M. Pillich*, Hamilton County Prosecuting Attorney, and *John D. Hill, Jr.*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Roger Kirk*, for Defendant-Appellant.

**MOORE, Judge.**

**{¶1}** Defendant-appellant Elijah Harper appeals the judgment of the Hamilton County Court of Common Pleas convicting him of trafficking in fentanyl. In his three assignments of error, Harper insists that his conviction was not supported by sufficient evidence, his conviction was against the manifest weight of the evidence, and remarks by the State's prosecuting attorney during its closing arguments denied him a fair trial. Upon assessing Harper's arguments and reviewing the record, we affirm the judgment of the court below.

## I.   *Factual and Procedural History*

**{¶2}** On March 28, 2023, Cincinnati police arrested Harper following a traffic stop in Avondale. Harper was eventually indicted on 12 drug-possession and trafficking-related counts, as well as three firearm-related counts.

**{¶3}** At trial, the State called four of the arresting officers to testify. Officer John Allen Phillips testified that on the date of the arrest, he was on patrol near the corner of Forest Avenue and Burnet Avenue, an area Officer Phillips knew was popular for drug transactions. Officer Phillips testified that he observed a black Infiniti idling near the curb before quickly pulling away without signaling. Officer Phillips recalled that after determining the Infiniti's registration tags had expired, he initiated a traffic stop.

**{¶4}** Officer Dylan Scalf observed Harper in the passenger seat of the car and recalled that he was defensive on approach. Officer Scalf testified that Harper initially identified himself as "Elijah Walker." The State introduced Officer Scalf's body-worn-camera ("BWC") video, which captured Harper proclaiming that he was not doing anything illegal and had nothing to hide. Officer Scalf's BWC recorded Scalf's request for a K-9 drug unit, as well as Harper's subsequent consent to search the vehicle.

However, Officer Scalf testified that because Harper and the driver disagreed over whether to allow police to search the vehicle, the police instead waited for the K-9 drug unit.

{¶5}   Officer Mark McChristian testified that once he walked his K-9 partner, Buddy, around the Infiniti, Buddy alerted for drugs.

{¶6}   Officer Scott Cox and Officer Scalf testified they then searched the vehicle.  Officer Scalf testified that he collected four cell phones from the car.  Officer Cox testified that he used a key from a ringlet left in the vehicle to open the locked glove compartment.  The State introduced Officer Cox's BWC footage which revealed a loaded handgun, two plastic bags of marijuana, one bag containing a powdered white substance, and three "bindles" containing powdered white substances hidden in empty cigarette packs.  Officer Cox described a "bindle" as a tightly folded paper that serves as a narcotic sampler for prospective buyers.  Lab testing revealed that the bag containing the powdered substance was 1.086 grams of a mix of heroin, fluorofentanyl, fentanyl, cocaine, methamphetamine, and xylazine.  However, the bindles were never tested.

{¶7}   After the driver and Harper were arrested and Mirandized, Officer Scalf questioned Harper for roughly two and a half minutes.  For the first 90 seconds, Officer Scalf's BWC footage revealed he spoke exclusively with Harper, and asserted that the driver was going to be a felon and that both individuals were going to go to jail unless Harper "wanted to save her." Harper then asked Officer Scalf to bring the driver from the other police cruiser so that he could see her.  Over the course of the next minute, Officer Scalf asked the driver and Harper to explain who owned the fentanyl and warned that the driver would be a felon unless Harper wanted to "fess up."  Harper then admitted ownership of the fentanyl and marijuana but refuted owning the gun.

4

Officer Scalf testified that no DNA testing was conducted on either the drugs or the gun. However, Officer Scalf testified that Harper was searched at the Hamilton County Justice Center, where a shell casing was found on Harper's clothing that matched the casings in the gun found with the drugs.

**{¶8}** During closing arguments, the State utilized a metaphor to describe the role of the defense. The State explained to the jury that the defense's role was to "throw mud" and cover up the picture the prosecution was attempting to paint, and that the lack of DNA evidence connecting Harper to the drugs was just "mud." The State further made comments concerning the driver:

> [B]ut you know what [the driver] did say, [Defense Counsel] didn't bring
> this up, because it's pretty damning to [Harper's] case, [the driver] said,
> "why am I being arrested for this?"

Defense counsel did not object to these remarks.

**{¶9}** At the conclusion of trial, the jury found Harper guilty on the drug-possession and trafficking counts, but a mistrial was declared on the firearm counts. Following a retrial on the firearm counts, Harper was acquitted. At sentencing, the court merged all the counts into Count 1, trafficking in fentanyl, and sentenced Harper to a term of 18 months, with a time-served credit of 403 days.

## II.   Analysis

**{¶10}** On appeal, Harper raises three assignments of error. Harper asserts that (1) his conviction was not supported by sufficient evidence, (2) his conviction was against the manifest weight of the evidence, and (3) the State's comments during closing arguments violated his due-process rights. We consider these arguments in turn.

### A. Sufficiency

**{¶11}** In his first assignment of error, Harper asserts that there was insufficient evidence to establish that he had actual or constructive possession of the drugs, or that he intended to engage in trafficking.

**{¶12}** A challenge to the sufficiency of the evidence tasks the reviewing court with determining whether the State satisfied its burden of production. *State v. Fritsch*, 2023-Ohio-2676, ¶ 16 (1st Dist.). To determine whether a conviction is supported by sufficient evidence, we "assess whether, construing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the necessary elements of a given crime to have been proved beyond a reasonable doubt." *State v. Rodriguez*, 2024-Ohio-5832, ¶ 8 (1st Dist.).

**{¶13}** "By its nature, a drug trafficking offense under R.C. 2925.03(A)(2), which requires that the offender knowingly '[p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance,' necessarily includes some degree of possession." *State v. Martin*, 2024-Ohio-10, ¶ 34 (1st Dist.); *see State v. Williams*, 2023-Ohio-4667, ¶ 11 (1st Dist.) (holding that hand-in-hand with a trafficking count, the State must show that the accused possessed the drugs). R.C. 2925.01(K) defines possession as "having control over a thing or substance but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."

**{¶14}** Upon reviewing the evidentiary record in a light most favorable to the State, and considering the relevant legal principles, the State put forth sufficient evidence to establish Harper possessed and intended to traffic a fentanyl-based compound. First, Harper admitted to possessing the fentanyl. While Harper suggests that his confession was the result of pressure, he has not developed this argument on

6

appeal, nor has he identified case law supporting this assertion considering the facts in this case. *See State ex rel. Cox v. Youngstown Civil Serv. Comm.*, 2021-Ohio-2799, ¶ 28, citing *Bronx Park South III Lancaster, L.L.C. v. Fairfield Cty. Bd. of Revision*, 2018-Ohio-1589, ¶ 10 (holding that the court would not address a constitutional argument when the party raising it had "not formulated a clear argument in support."). We therefore decline to address Harper's argument.

{¶15} Further, there was sufficient evidence to demonstrate Harper intended to engage in trafficking. The State demonstrated that in addition to the bag of fentanyl, there were three bindles and four cellphones in the car. *See State v. Fritz*, 2020-Ohio-5231, ¶ 34 (12th Dist.) (recognizing that multiple cellphones in the presence of drugs are indicative of drug trafficking). The jury heard from Officer Scalf that bindles are commonly used in the drug trade to entice prospective drug buyers to purchase product. Upon construing the evidence in a light most favorable to the State, the State put forth sufficient evidence to demonstrate that Harper intended to traffic in fentanyl.

{¶16} Accordingly, Harper's first assignment of error is overruled.

### B. Manifest Weight

{¶17} In his second assignment of error, Harper asserts that his conviction was against the manifest weight of the evidence.

{¶18} A review of the manifest weight of the evidence concerns the State's burden of persuasion. *State v. Sexton*, 2025-Ohio-718, ¶ 20 (1st Dist.), citing *State v. Messenger*, 2022-Ohio-4562, ¶ 26; *see State v. Hunter*, 2024-Ohio-5782, ¶ 28 (1st Dist.) (holding that a manifest-weight review concerns the evidence's effect of inducing belief). In evaluating a manifest-weight challenge, we review whether the trier of fact created a manifest miscarriage of justice in resolving conflicts in the evidence. *Id.* We afford substantial deference to the credibility determinations of the

trier of fact because the trier directly observes the witnesses during the proceedings. *Id*. at ¶ 21. A conviction may only be reversed under a manifest-weight review in exceptional cases where the evidence weighs heavily against the conviction. *Id*.

**{¶19}** Like his sufficiency challenge, Harper's manifest-weight challenge also fails. The evidence presented before the jury provided a sufficient basis for the reasonable inference that Harper possessed the drugs and intended to traffic. The jury considered Harper's admission to possessing fentanyl, the multiple cellphones located in the vehicle, and the fentanyl located near the bindles. From this evidence, we hold the jury did not clearly lose its way in finding Harper guilty and thus Harper's conviction was not against the manifest weight of the evidence. Therefore, Harper's second assignment is overruled.

### C. Prosecutorial Misconduct

**{¶20}** In his third assignment of error, Harper insists that the trial court erred when it allowed the State to make inflammatory comments during its closing argument. He alleges that the prosecutor's statements that the defense "threw mud" misled the jury and therefore denied him a fair trial. Further, Harper alleges that the prosecutor's closing remarks improperly shifted the burden of proof to the defense when he stated,

> [B]ut you know what [the driver] did say, [Defense counsel] didn't bring this up, because it's pretty damning to his case, [the driver] said, 'why am I being arrested for this?'

**{¶21}** For a prosecutorial-misconduct claim, we consider "(1) whether the remarks or questions were improper, and (2) if so, whether the remarks affected the accused's substantial rights." *State v. Truesdell*, 2024-Ohio-5376, ¶ 34 (1st Dist.),

8

citing *State v. Lott*, 51 Ohio St.3d 160, 165 (1990). The Ohio Supreme Court has recognized that the prosecution is afforded a "certain degree of latitude" in closing arguments. *State v. Rouzier*, 2021-Ohio-1466, ¶ 14 (1st Dist.), quoting *State v. Smith*, 14 Ohio St.3d 13 (1984). However, this latitude is not unfettered, and the prosecution is expected to refrain from going beyond the evidence before the jury, relying upon a personal belief of a witness's credibility, or the accused's guilt, or improper insinuations. *Id.* at ¶ 14-15.

**{¶22}** Where remarks are not objected to at trial, our review of the challenged statements is limited to plain error. *State v. Mounts*, 2023-Ohio-3861, ¶ 48 (1st Dist.). "For plain error to exist, the defect in the trial proceedings must be obvious and must have affected the outcome of the trial." *State v. Walker*, 2025-Ohio-975, ¶ 49 (1st Dist.), citing *State v. Payne*, 2007-Ohio-4642, ¶ 16. The accused must demonstrate that but for the misconduct, the outcome of the trial clearly would have been different. *State v. Sanders*, 2015-Ohio-5232, ¶ 26 (1st Dist.). Courts should only recognize plain error under "exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.,* citing *State v. Lang*, 2011-Ohio-4215, ¶ 108. Since Harper did not object at trial, our analysis is constrained to plain-error review.

**{¶23}** The State's "mud" remarks do not amount to plain error. In *State v. Saleem*, 1999 Ohio App. LEXIS 5444, *12 (1st Dist. Nov. 19, 1999), this court considered a set of circumstances similar to the case sub judice in which the prosecution claimed that the defense wanted to "muck" everything up, to drag the proceedings into the mud, and mislead the jury. We also reviewed these statements for plain error. *Id.* at *9. While we considered the prosecution's comments to be an improper denigration of defense counsel's role, we concluded that these comments neither denied the accused a fair trial nor prejudiced her substantive rights. *Id.* at *14.

**{¶24}** Here, the same conclusion can be reached. Even assuming that the prosecution's statements were inappropriate, the comments were not so prejudicial as to have affected the outcome of the trial. A review of the record fails to establish that, but for the prosecution's comments, Harper would not have been convicted. Therefore, we cannot say that the State's "mud" remarks constituted plain error.

**{¶25}** Similarly, the State's comments that allegedly shifted the burden of proof onto Harper did not deny him a fair trial. The State's comment concerning the defense's failure to address the driver's inquiry as to why she was being arrested was made to counter Harper's trial strategy that the drugs belonged to the driver. We therefore cannot hold that the prosecution's statement denied Harper a fair trial or rose to the level of plain error. Harper's third assignment of error is overruled.

### III. Conclusion

**{¶26}** In overruling each of Harper's assignments of error, we affirm the judgment of the trial court.

Judgment affirmed.

**KINSLEY, P.J.,** and **ZAYAS, J.,** concur.