[Cite as *State v. Rouzier*, 2021-Ohio-1466.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-200039 |
| | | C-200040 |
| Plaintiff-Appellee, | : | TRIAL NOS. C-19CRB-22649A/B |
| vs. | : | *O P I N I O N.* |
| DAVID ROUZIER, | : | |
| Defendant-Appellant. | : | |

Criminal Appeals From: Hamilton County Municipal Court

Judgments Appealed From Are: Affirmed in Part, Sentences Reversed, and Cause Remanded for Resentencing

Date of Judgment Entry on Appeal: April 28, 2021

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Ronald Springman*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Krista Gieske*, Assistant Public Defender, for Defendant-Appellant.

**WINKLER, Judge.**

{¶1}     Defendant-appellant David Rouzier appeals his convictions for the unlawful restraint and assault of Bobbie Johnson. Rouzier was convicted after a bench trial.   We affirm the findings of guilt, but reverse the sentences because the trial court failed to provide Rouzier with the right of allocution.

## Facts and Procedural History

{¶2}     Johnson met Rouzier on the evening of September 6, 2019, at the Madeira house he shared with his mother Robin Jones.  Rouzier previously agreed to give Johnson property her daughter had left behind in Rouzier's car after an argument.  In exchange, Johnson had agreed to give Rouzier $100.

{¶3}     Johnson claimed that during the attempted exchange in the front room of the house, Rouzier became enraged after she balked at giving him the $100 without first seeing all of her daughter's property.  He then barricaded her inside the house.  When she tried to call the police on her cell phone, he wrestled it away from her using enough force that it caused bruising on her hand.

{¶4}     Johnson further indicated that Jones, whom she had briefly met when she arrived, reentered the front room at that point and encouraged Johnson to give the $100 to Rouzier.  After Johnson gave Rouzier the $100, Rouzier returned her cell phone to her and allowed her out of the house to search his car for her daughter's property, some of which she never found.

{¶5}     Johnson again threatened to call the police and left the Rouzier-Jones property.  From her car, which she had moved away from the house and just up the street, Johnson watched Rouzier sneak out of the house while she was calling the police.  Madeira Police Officer James Roy arrived to investigate, but no one answered

2

the door of the Rouzier-Jones home. Later that evening, Officer Roy came across Rouzier during a traffic stop. Rouzier stated that he had not been home all evening.

{¶6} Based on his encounter with Johnson, Rouzier was charged with unlawful restraint and assault. At Rouzier's trial, Johnson and Officer Roy testified for the state. Jones testified for the defense. Her testimony contradicted Johnson's testimony in some respects. She claimed to have been in the front room with Rouzier and Johnson for the entire ten-to-15-minute encounter or nearby in the bathroom. Further, while she acknowledged that Rouzier had a "confrontational" encounter with Johnson that evening and grabbed Johnson's cell phone from her after she had threatened to call the police, she denied that he had barricaded Johnson inside the house or injured her hand.

{¶7} During closing argument, the prosecutor prefaced his comments related to the credibility of the witnesses with "I think" and "I believe," but defense counsel did not object. The trial court found Rouzier guilty of both offenses and proceeded to sentence Rouzier without asking Rouzier if he personally wished to offer any information in mitigation. Rouzier now appeals, raising four assignments of error. For ease of discussion, we address the assigned errors out of order.

Analysis

{¶8} In his third assignment of error, Rouzier challenges the sufficiency and weight of the evidence supporting his convictions. The applicable statute criminalizing unlawful restraint provides that "[n]o person, without privilege to do so, shall knowingly restrain another of the other person's liberty." R.C. 2905.03(A). The applicable assault statute provides that "[n]o person shall knowingly cause or attempt to cause physical harm to another or another's unborn." R.C. 2903.13(A).

3

{¶9}    Rouzier's sufficiency argument focuses on the "knowingly" mental state of each offense.  "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature."  R.C. 2901.22(B).

{¶10}   In this case, Johnson testified that during the encounter, Rouzier "locked" and "blocked" the front door while bellowing that she "wasn't getting out of this * * * place until I get my money."  She further testified that she felt trapped, she tried to call the police, and Rouzier allowed her to exit from the house only after she paid him the $100.  Finally, Johnson testified that Rouzier's forceful actions when wrestling her cell phone from her caused her pain and injured her hand. A photograph of her bruised hand was admitted as an exhibit.

{¶11}   The evidence also showed that Rouzier snuck out of the house after the encounter and falsely reported to Officer Roy that he had not been home at the time of the encounter, facts indicating a consciousness of guilt.  We conclude that a rational factfinder, viewing this evidence in the light most favorable to the state, could have found the state had proved beyond a reasonable doubt every element of unlawful restraint and assault, including that Rouzier acted knowingly when he barricaded Johnson in his house preventing her from leaving and separately injured her hand.  *See State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶12}   Next Rouzier argues that Jones was the more credible witness and her testimony conflicted with Johnson's recollection of the encounter. The credibility of witnesses is primarily for the trier of fact.  *See State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. Our review of the record does

not persuade us that the trial court clearly lost its way and created a manifest miscarriage of justice in believing Johnson and finding Rouzier guilty of the charged offenses. *See State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Accordingly, we hold that Rouzier's convictions were supported by sufficient evidence and were not against the manifest weight of the evidence, and we overrule the third assignment of error.

{¶**13**}   In his second assignment of error, Rouzier contends that the prosecuting attorney impermissibly injected his personal beliefs concerning the veracity of the witnesses into his closing argument and that this unobjected-to misconduct resulted in plain error. The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant. *See State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984), citing *United States v. Dorr*, 636 F.2d 117 (5th Cir.1981). Prosecutorial misconduct does not amount to plain error unless it is clear that the conduct was improper and that without the misconduct the outcome of the trial would have been otherwise. *See, e.g., State v. Slagle*, 65 Ohio St.3d 597, 605, 605 N.E.3d 916 (1992); *State v. Boles*, 190 Ohio App.3d 431, 2010-Ohio-5503, 942 N.E.2d 417, ¶ 51 (6th Dist.2010).

{¶**14**}   In evaluating the propriety of a prosecutor's remarks, we recognize that the prosecution is entitled to a "certain degree of latitude" during closing argument. *See Smith* at 13. But a prosecutor has a "duty" to abstain from "efforts to obtain a conviction by going beyond the evidence which is before the jury." *Id.* at 14. "[I]mproper insinuations and assertions of personal knowledge by the prosecution are apt to carry great weight against the accused when they should properly carry none." *Id.* at 15.

{¶15} Thus, it is improper for a prosecutor to express a personal belief or opinion as to a witness's credibility or the accused's guilt. *Id.* at 14; *State v. Myers*, 154 Ohio St.3d 405, 2018-Ohio-1903, 114 N.E.3d 1138, ¶ 145; *State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, 836 N.E.2d 1173, ¶ 117; *State v. Williams*, 99 Ohio St.3d 439, 2003-Ohio-4164, 793 N.E.2d 446, ¶ 46.

{¶16} A prosecutor's personalization of credibility conflicts with the rules of professional conduct. *See Smith* at 14, citing former DR 7-106(C)(4) of the Code of Professional Responsibility, superseded by Prof.Cond.R. 3.4(e), demanding that "[a] lawyer shall not * * * state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant, or the guilt or innocence of an accused."

{¶17} The prosecutor is not prohibited from presenting credibility-based arguments that draw from the evidence at trial and are formulated by "pointing out" considerations typically used to evaluate credibility, such as "demeanor, consistency, and [the witness's] ability to observe, as well the extent to which other evidence corroborated [the witness's] testimony." *Myers* at ¶ 147. But a prosecutor's commentary crosses the line into misconduct by "imply[ing] knowledge of facts outside the record" or by "plac[ing] his or her credibility in issue." *Id.*; *State v. Tucker*, 1st Dist. Hamilton No. C-020821, 2003-Ohio-6056, ¶ 23 (Prosecutor's comment during closing argument that the state's witness "came in here and told the truth" was improper vouching.).

{¶18} A prosecutor's use of "I believe" and "I think" to preface credibility arguments should be avoided. *See Williams*, 99 Ohio St.3d 439, 2003-Ohio-4164, 793 N.E.2d 446, at ¶ 45-46. For example, in this case, the prosecutor argued, "I believe that Miss Johnson has no reason to make this up," implying personal

knowledge. This problem is circumvented by arguing instead, "there is nothing in the evidence to suggest that Miss Johnson had a reason to make this up." Similarly, the prosecutor could have appropriately commented on Jones's potential bias based on her familial relationship with Rouzier without personalizing the argument. But the prosecutor did personalize the argument, stating instead, "Your honor, I believe Miss Jones is trying to protect her son in this situation."

{¶19} Whether improper prosecutorial commentary during closing argument rises to reversible error involves a separate analysis. *Smith*, 14 Ohio St.3d at 14-15, 470 N.E.2d 883. To that end, in a bench trial, the trial court is presumed to rely on only relevant, material evidence in arriving at its judgment. *See State v. White*, 15 Ohio St.2d 146, 151, 239 N.E.2d 65 (1968), cited in *State v. Beck*, 2016-Ohio-8122, 75 N.E.3d 899, ¶ 28 (1st Dist.). That presumption is not rebutted by the record, which instead contains the trial court's oral summary of the admissible evidence that supported each conviction. Further, in this case, the defendant did not object, waiving all but plain error. When we review the challenged comments in the context of the entire closing argument and the substantial evidence presented at the trial, we conclude that those comments did not affect the trial's result and constitute plain error. Accordingly we overrule the second assignment of error.

{¶20} In his first assignment of error, Rouzier argues the trial court at sentencing denied him the right of allocution as provided under Crim.R. 32(A). The Ohio Supreme Court has observed that trial courts must scrupulously adhere to Crim.R. 32(A), guaranteeing the defendant's personal right of allocution. *See State v. Green*, 90 Ohio St.3d 352, 359-360, 738 N.E.2d 1208 (2000), cited in *State v. Osume*, 1st Dist. Hamilton No. C-140390, 2015-Ohio-3850, ¶ 19. Failure to do so requires resentencing, unless the error was invited or harmless. *See State v.*

*Campbell*, 90 Ohio St.3d 320, 738 N.E.2d 1178 (2000), paragraph three of the syllabus; *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 200.

{¶21} The state concedes that in this case a resentencing is required. The trial court failed to ask Rouzier if he personally wished to make a statement or present information in mitigation of punishment, *see* Crim.R. 32(A), and the error was not invited or harmless. Accordingly, we sustain the first assignment of error.

{¶22} In his fourth and final assignment of error, Rouzier argues the trial court failed to properly calculate and incorporate jail-time credit into his sentencing entries. Our resolution of the first assignment of error renders this alleged error moot, because the sentences imposed by the trial court must be reversed.

### Conclusion

{¶23} Because Rouzier was not afforded the opportunity to speak in mitigation before the court imposed his sentences as required by Crim.R. 32(A), his sentences must be set aside and the cause remanded for resentencing. In all other respects, we affirm.

Judgment accordingly.

**MYERS**, **P.J.**, and **CROUSE**, **J.**, concur.

Please note:

The court has recorded its own entry this date.