[Cite as *State v. Hall*, 2021-Ohio-3121.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-200298 |
| | | C-200299 |
| Plaintiff-Appellee, | : | C-200300 |
| | | TRIAL NOS. 19TRC-37672A |
| vs. | : | 19TRC-37672B |
| | | 19TRC-37672C |
| MARKEBRA HALL, | : | |
| Defendant-Appellant. | : | *O P I N I O N.* |

Criminal Appeals From: Hamilton County Municipal Court

Judgments Appealed From Are: Affirmed in C-200299 and C-200300; Appeal Dismissed in C-200298

Date of Judgment Entry on Appeal: September 10, 2021

*Andrew W. Garth*, City Solicitor, *William T. Horsley*, Chief Prosecuting Attorney, and *Keith C. Forman*, Supervising Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Sarah E. Nelson*, Assistant Public Defender, for Defendant-Appellant.

**MYERS, Presiding Judge.**

{¶1} Following a jury trial, defendant-appellant Markebra Hall was found guilty of operating a vehicle while under the influence of alcohol and operating a vehicle with a prohibited breath-alcohol level, both of which were OVI offenses. She was also found guilty of failing to maintain reasonable control. The trial court merged the under-the-influence OVI offense with the prohibited-breath-alcohol OVI offense, and sentenced Hall for the prohibited-breath-alcohol OVI offense. Because Hall was therefore not convicted of the under-the-influence OVI offense, this court lacks jurisdiction to hear the appeal relating to that offense, so we dismiss the appeal in the case numbered C-200298. And, finding no merit to Hall's challenges to her prohibited-breath-alcohol OVI and reasonable-control convictions, we affirm the trial court's judgments in the cases numbered C-200299 and C-200300.

*Background Facts and Procedure*

{¶2} At trial, the state presented evidence that, on October 15, 2019, Hall and her boyfriend Anthony Holly ("Holly") were the only two occupants of a car that crashed into a moving garbage truck.

{¶3} Michelle Wissman Schwiebert testified that she was driving on Gilbert Avenue when she saw a car go left of center and collide with a garbage truck. She called 911 and reported that the driver did not get out of the car, but that the passenger jumped out.

{¶4} Schwiebert testified that after the collision, the damaged car continued to move toward her before it stopped. She said that when the car came to a stop, she saw a male figure jump out of the passenger side of the car.

{¶5} The driver of the garbage truck, Jason Boyd, testified that he and his partner were heading up Gilbert Avenue when an approaching car crossed the double line into their lane of traffic and struck the truck. He said that the car struck the

driver's side tire of the truck with enough force to "knock[] the lug nuts off of the truck."

{¶6}   Boyd testified that there were two people, a man and a woman, in the car that struck the garbage truck.  As Boyd and his partner sat in the truck, a man walked up to the truck and confronted them.  Boyd described the man as "real drunk" and "[i]nebriated."   According to Boyd, the man repeatedly asked, "Why did you hit us?," but the man "was staggering so we just ignored him."

{¶7}   According to Boyd, when Cincinnati Police Officer Jennifer Barge arrived on the scene, he told the officer that he thought the man was driving the car, but he was not sure.  When asked on direct examination, "Did you see the driver that day that hit you with your own eyes?," Boyd responded, "No."  On cross-examination, after watching the video from Officer Barge's body camera, Boyd acknowledged that he had told the officer that the man was "definitely" driving.

{¶8}   Officer Barge testified that when she arrived on the scene of the accident, she found Hall in the driver's seat of the disabled car, which was obstructing traffic in the middle of the road.  At that time, Hall's boyfriend Holly was on the sidewalk.

{¶9}   Officer Barge testified that Hall exhibited bloodshot, watery eyes and slurred speech, and had a strong odor of alcohol about her breath.  Hall told Officer Barge that she had been drinking.  Officer Barge asked Hall if she was driving, and Hall said yes.

{¶10}  Officer Barge said that Hall did not appear to be injured.  When the officer told Hall to step out of the car to the sidewalk, Hall was staggering and unsteady on her feet.

{¶11}  Officer Barge's body camera video showed that she spoke to Boyd, the garbage truck driver, and his partner as they stood near Hall and Holly on the sidewalk.  The officer asked Boyd and his partner if they had seen "him" (referring to

3

Holly) driving, and Boyd responded, "I didn't see it." Then, according to Officer Barge, she led Boyd away from Holly and Hall so that Holly would not "get mad." Once Boyd was no longer standing near Holly, Boyd told the officer that "he" (referring to Holly) was "definitely driving" the car.

{¶12} Officer Barge testified that she told Boyd there were "conflicting stories on who was driving." The officer testified that Boyd "varied his statement two or three times" and told her that he was "80 percent" certain that the male was driving.

{¶13} Officer Barge testified that she led Hall away from Holly so that she could explain to Hall the seriousness of being charged with OVI and to confirm whether Hall was driving the car. Again, Hall stated that she was the driver.

{¶14} Based upon witness statements, Hall's admission to driving the car that was involved in the accident, her admission to drinking, her slurred speech, bloodshot and watery eyes, strong odor of alcohol, and staggering, Officer Barge's opinion was that Hall was under the influence of alcohol and that her ability to operate a motor vehicle was appreciably impaired as a result.

{¶15} Cincinnati firefighter Jeffrey Nienhaus testified that after he arrived on the scene, he evaluated Hall by checking her vital signs. He asked Hall where she had been seated in the car, "a common question that we ask in a motor vehicle accident to determine how injured they may be based on the damage of the car." Hall told Nienhaus that she was the driver. Nienhaus testified that Hall complained of right shoulder pain, but she refused treatment.

{¶16} Officer Barge arrested Hall and took her to the police station, where an Intoxilyzer test showed that Hall's breath-alcohol content was 0.187. She determined that Hall was the registered owner of the car. Hall was charged with operating a vehicle while under the influence of alcohol, in violation of R.C. 4511.19(A)(1)(a); operating a vehicle with a prohibited breath-alcohol level (of 0.17 or

more), in violation of R.C. 4511.19(A)(1)(h); and failure to maintain reasonable control, in violation of R.C. 4511.202.

{¶17} Cincinnati Police Officer Timothy Watson testified that he was the second officer to arrive on the accident scene. After Hall's arrest and subsequent breath-alcohol test at the police station, Officer Watson testified that, as a courtesy, he drove Hall home. Video from the officer's body camera showed that during the car ride, he said to Hall, "I hope you didn't take a charge for him," referring to Hall's boyfriend Holly, and Hall responded, "I did."

{¶18} Hall's theory of defense at trial was that she was not the driver of the car.

{¶19} The jury found Hall guilty of all three offenses. The trial court merged the under-the-influence OVI offense with the prohibited-breath-alcohol OVI offense, and sentenced Hall for the prohibited-breath-alcohol OVI offense to 180 days in jail, suspended 174 days, and imposed one year of community control, a one-year driver's license suspension, a fine, and costs. For the reasonable-control offense, the trial court imposed a $0 fine and remitted costs. Hall now appeals.

*Nondisclosure of A Witness's Address*

{¶20} In her first assignment of error, Hall argues that the trial court abused its discretion by allowing Michelle Wissman Schwiebert to testify at trial. In its discovery response, the state disclosed Schwiebert's name to the defense, but it did not disclose her address, pursuant to a certification of nondisclosure under Crim.R. 16. Hall contends that the state failed to properly certify the nondisclosure and that the trial court failed to hold a proper Crim.R. 16(F) hearing on the matter.

{¶21} Crim.R. 16(I) requires each party to provide to opposing counsel a written witness list, including the names and addresses of any witness the party intends to call in its case-in-chief, or reasonably anticipates calling in rebuttal. If the prosecutor does not disclose materials under the rule, the prosecutor must certify to

5

the court that the prosecutor is doing so for one of the reasons listed in Crim.R. 16(D). As relevant here, a prosecutor must have "reasonable, articulable grounds to believe that disclosure will compromise the safety of a witness, victim, or third party, or subject them to intimidation or coercion." Crim.R. 16(D)(1). Reasonable, articulable grounds "may include, but are not limited to, the nature of the case, the specific course of conduct of one or more parties, threats or prior instances of witness tampering or intimidation, whether or not those instances resulted in criminal charges, whether the defendant is pro se, and any other relevant information." Crim.R. 16(D).

{¶22} Upon motion by the defendant, the trial court shall review the prosecutor's "decision of nondisclosure * * * for abuse of discretion during an *in camera* hearing conducted seven days prior to trial, with counsel participating." Crim.R. 16(F). If the trial court finds an abuse of discretion by the prosecutor, the court "may order disclosure, grant a continuance, or other appropriate relief." Crim.R. 16(F)(1). A trial court's ruling on a prosecutor's certification of nondisclosure will not be reversed on appeal absent an abuse of discretion and proof of material prejudice. *State v. Baber*, 2021-Ohio-1506, ____ N.E.3d ____, ¶ 19-20 (1st Dist.).

{¶23} In this case, Hall filed a demand for discovery on October 5, 2019. The state's initial discovery response on November 5, did not identify Schwiebert as a witness. The response included a recording of Schwiebert's 911 call in which she identified herself, and a copy of a police report that listed Schwiebert's cell phone number and her name, although the name was misspelled. The case was continued several times at Hall's request. In December 2019, Hall filed a jury demand and the matter was set for jury trial on February 24, 2020.

{¶24} The February trial date was continued at the state's request until March 11. On February 25, the state filed a supplemental discovery response in

which it identified "[a]ny witnesses listed or mentioned in the provided reports or in the videos/audios from the provided discovery," but it did not identify Schwiebert as a witness. The state filed a supplemental discovery response on March 9 that, for the first time, identified Schwiebert as a witness by name, but the response failed to include Schwiebert's address.

{¶25} The March trial date was continued at Hall's request until April 6. On March 24, Hall filed a motion to compel the state to provide an address for Schwiebert. The following day, the state filed a certification of nondisclosure, which stated:

> Pursuant to Crim.R. 16(D)(1), the [p]rosecution has reasonable, articulable grounds to believe that disclosure of address information will subject the witness to intimidation or coercion. Therefore, the address information is not being provided at this time.

{¶26} On April 6, the case was continued to June 1 because jury trials in the Hamilton County courthouse were suspended due to the COVID-19 pandemic. On April 13, Hall filed a "motion in opposition to the state's certification of nondisclosure," seeking that the court "review and [] deny the state's certification of nondisclosure," and requested a hearing on the motion. However, the motion was not scheduled for a hearing. The jury trial was continued from June 1 to July 21 and then to August 3, because of the pandemic.

{¶27} On the first day of trial, defense counsel informed the court that she had previously requested a hearing on the state's discovery certification with respect to Schwiebert, and stated:

> So specifically I am asking for this individual's address. Alternatively I am asking what these reasonable and articulable grounds are that my client - - who has no criminal record and who is

7

53 years old, on an OVI case - - would intimidate or coerce an individual listed in discovery.

{¶28} At no time did defense counsel ask that Schwiebert not be allowed to testify, nor did she seek a continuance of the trial.

{¶29} The trial court stated:

First of all from a procedural standpoint obviously this case has been continued roughly four times for jury trial. The Court was not specifically made aware of the existence of this issue or this motion.

We are up against the issue involving the COVID-19. And this is the first jury trial in Municipal Court since jury trials were ended pursuant to our administrative order and the dictates of the Ohio Supreme Court.

And it was my understanding that when I put this case in the queue this afternoon roughly at 11:45, that there were no issues of this nature that needed to be addressed or resolved. So this quite frankly kind of blind sides the Court. Even though, yes, it was filed, I was not aware that this issue remained pending and thus needed to be addressed.

{¶30} In response, the prosecutor argued that defense counsel had had months to schedule her motion on the court's docket, but had failed to do so. The prosecutor stated that he had withheld Schwiebert's address "because this witness will be intimidated or coerced just by the very nature of anyone going to her residence and knocking on her door." The prosecutor described Schwiebert as "a third party Good Samaritan who has fears of testifying." He stated:

We all know when the addresses are given, investigators from the Public Defender's Office go out and they are entitled to do that. However, in this particular case I knew for certain that if that happens,

8

she would be completely intimidated and not come to court. And that
is why it was not disclosed to [defense counsel].

{¶31} Although defense counsel never asked that Schwiebert be precluded from testifying, the trial court considered the motion as a motion to exclude Schwiebert's testimony. The court found that the prosecutor had sufficiently articulated a reason for nondisclosure. Nonetheless, the court also determined that, even if the state had improperly withheld Schwiebert's address, Hall had suffered no prejudice as a result of the nondisclosure because "there had been no supplemental efforts [by defense counsel] in order to get that information[.]" The court denied the motion but offered two remedies:

[O]bviously one of the remedies would be a continuance.

* * *

As an alternative remedy what I might suggest is that between now and the time [Schwiebert] testifies * * * if she wants to avail herself - - if the defense attorney wants to meet with her to discuss, she can do that. Obviously as to whether[,] and a witness has at their discretion the ability to decline that request[,] but it would at least make her available for that sole purpose.

{¶32} Defense counsel did not request a continuance, and the parties proceeded to voir dire potential jurors. The next day, the trial court asked the parties if there was anything they wanted to put on the record before the jurors entered the courtroom, and defense counsel made no mention of any efforts, successful or otherwise, to contact Schwiebert, and made no motion for a continuance, which the trial court had made clear it would have granted. Defense counsel raised no objection to Schwiebert's being allowed to testify when called by the state and elected not to cross-examine her.

{¶33} Following our review of the record, we hold that the prosecutor's certification of nondisclosure under Crim.R. 16(D)(1) was inadequate because the prosecutor lacked reasonable, articulable grounds to believe that disclosure of the witness's address would compromise her safety or subject her to intimidation or coercion. Although one of Crim.R. 16's stated purposes is "to protect the well-being of witnesses," *see* Crim.R. 16(A), that does not include a witness's generalized "fears of testifying," to use the prosecutor's phrase, or a witness's apprehension about being contacted by defense investigators or defense counsel. The prosecutor failed to cite any of the "reasonable, articulable grounds" identified in Crim.R. 16(D) to justify nondisclosure. Generalized apprehension is not enough. We recognize that the rule sets forth a nonexhaustive list of examples of reasonable, articulable grounds, but in this case, the prosecutor cited nothing about the nature of the case, any specific course of conduct by Hall, any threats or intimidation, or any other relevant information that would support nondisclosure. The trial court abused its discretion by accepting the prosecutor's certification of nondisclosure.

{¶34} Nevertheless, the trial court proceeded as if did *not* accept the prosecutor's certification because the court offered Hall remedies set forth in Crim.R. 16(F)(1) that would have been appropriate relief for an inadequate certification of nondisclosure. The court proposed two remedies, either a continuance or an opportunity to speak with Schwiebert before she testified, but defense counsel did not take advantage of either of the court's proposals and did not object to Schwiebert's being allowed to testify when she was called as a witness.

{¶35} Although the state's certification of nondisclosure was inadequate to properly withhold Schwiebert's address, Hall has failed to demonstrate that she was materially prejudiced by the trial court's acceptance of the certification. As conceded by Hall's appellate counsel, Hall's prejudice claim is diminished by the fact that the state's initial discovery response, provided about nine months before trial, included a

10

recording of the 911 call wherein Schwiebert identified herself and a copy of the police report of the incident, which listed Schwiebert's cell phone number. Hall has failed to explain how she was prejudiced by the state's withholding of Schwiebert's address where she knew Schwiebert's name and cell phone number months before trial, and where the trial court offered her a continuance or an opportunity to try to speak to Schwiebert prior to her testimony. We overrule the first assignment of error.

### Prosecutorial Misconduct

{¶36} In her second assignment of error, Hall argues that prosecutorial misconduct during closing argument deprived her of a fair trial. She contends that the prosecutor unfairly bolstered the credibility of the police officers and their investigation.

{¶37} The test for whether prosecutorial misconduct mandates reversal is whether the prosecutor's remarks were improper, and, if so, whether they prejudicially affected the substantial rights of the accused. *State v. Kirkland*, 160 Ohio St.3d 389, 2020-Ohio-4079, 157 N.E.3d 716, ¶ 115. In evaluating prejudice, we must consider the effect of the misconduct "on the jury in the context of the entire trial." *State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, 108 N.E.3d 1, ¶ 228, quoting *State v. Keenan*, 66 Ohio St.3d 402, 410, 613 N.E.2d 203 (1993). To be prejudicial, the remarks must be "so inflammatory as to render the jury's decision a product solely of passion and prejudice." *State v. Ford*, 158 Ohio St.3d 139, 2019-Ohio-4539, 140 N.E.3d 616, ¶ 385, quoting *State v. Williams*, 23 Ohio St.3d 16, 20, 490 N.E.2d 906 (1986).

{¶38} Improper vouching occurs when a prosecutor implies knowledge of facts outside the record or places her or his personal credibility in issue. *State v. Myers*, 154 Ohio St.3d 405, 2018-Ohio-1903, 114 N.E.3d 1138, ¶ 145. A prosecutor may not express a personal belief or opinion as to a witness's credibility. *Id.*

11

{¶39} During closing argument, the prosecutor referred to the police officers as "amazing human beings." The trial court overruled defense counsel's objection and admonished the prosecutor to "be careful in that regard." Then the prosecutor said that the police "did a great job." Defense counsel did not object to the latter remark. Later, the prosecutor stated, "Officer Watson was powerful testimony [sic]." The court overruled a defense objection to the statement.

{¶40} Because Hall objected to the "amazing human beings" and "powerful testimony" comments, we apply a harmless-error standard of review. *See State v. Hayes*, 2020-Ohio-5322, 162 N.E.3d 947, ¶ 51 (1st Dist.). Under the harmless-error standard, the state must demonstrate that the error did not affect the substantial rights of the defendant, that is, that the error did not affect the outcome of the trial. *Id.*, citing *State v. Jones*, 160 Ohio St.3d 314, 2020-Ohio-3051, 156 N.E.3d 872, ¶ 18. However, because Hall did not object to the "great job" remark, she must show that (1) an error occurred, (2) the error was obvious, and (3) it affected the outcome of the trial. *Id.* at ¶ 41.

{¶41} Even if any of the prosecutor's remarks constituted improper vouching, we cannot say that they affected the outcome of the trial. The court "mitigated the impact of the prosecutor's statement[s] by instructing the jury that the closing argument was 'not evidence' and that it was for the jury to decide what the evidence showed." *See Kirkland*, 160 Ohio St.3d 389, 2020-Ohio-4079, 157 N.E.3d 716, at ¶ 117. In addition, the court instructed the jury that it was not required to believe the testimony of any witness, and that it could "believe or disbelieve all or any part of the testimony of any witness." Viewing the prosecutor's remarks in the context of the entire trial, we cannot say that the outcome of the trial was affected. Therefore, no plain error occurred in the court's admission of the "great job" remark, and the court's admission of the "amazing human beings" and "powerful testimony" comments was harmless error. We overrule the second assignment of error.

*Manifest Weight of the Evidence*

**{¶42}** In her third assignment of error, Hall challenges the weight of the evidence supporting her convictions. Specifically, she contends that the state's evidence did not prove that she was the driver of the car.

**{¶43}** In reviewing a challenge to the weight of the evidence, we sit as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). We must review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. *Id.*

**{¶44}** Overall, the jury was in the best position to judge the credibility of the witnesses. *See State v. Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, 89 N.E.3d 554, ¶ 165. The jury was entitled to weigh the evidence, consider the motivations of the witnesses, and choose to believe all, part, or none of the testimony offered. *See State v. Williams*, 1st Dist. Hamilton No. C-180574, 2020-Ohio-1367, ¶ 36.

**{¶45}** There was no dispute that Hall and Holly were the only two occupants of the car, that Schwiebert saw a male exit from the passenger side of the car, and that Officer Barge found Hall seated in the driver's seat. Hall repeatedly stated that she was the driver, despite having multiple opportunities at the scene and later at the station to state otherwise. Hall did not claim that she was not the driver until after she was charged with OVI and was on her way home from the police station. The jury was entitled to believe the evidence that Hall was driving and to disbelieve her postarrest statement to Officer Watson that she was not driving. In addition, the jury was entitled to consider Boyd's testimony and weigh it with all the evidence. It was entitled to believe Boyd's testimony that, although he said at the scene that the man was driving the car, he had not actually seen whether the man or woman was driving. Ultimately, it was for the jury to decide credibility and weigh the evidence. This is not "the exceptional case in which the evidence weighs heavily against the

conviction." *See Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶46}** We overrule the third assignment of error, and we affirm the judgments of the trial court in the cases numbered C-200299 and C-200300. We dismiss the appeal in the case numbered C-200298.

Judgment accordingly.

**CROUSE** and **BOCK, JJ.,** concur.

Please note:

The court has recorded its own entry this date.