[Cite as *State v. Hahaj*, 2025-Ohio-52.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-240033 |
| | | TRIAL NO. C/23/CRB/5114/A |
| Plaintiff-Appellant, | : | |
| | | |
| vs. | : | |
| | | *O P I N I O N* |
| KIMBERLY HAHAJ, | : | |
| | | |
| Defendant-Appellee. | : | |

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: January 10, 2025

*Connie Pillich*, Hamilton County Prosecuting Attorney, and *Philip R. Cummings,* Assistant Prosecuting Attorney, for Plaintiff-Appellant,

*Raymond T. Faller*, Hamilton County Public Defender, and *Lora Peters*, Assistant Public Defender, for Defendant-Appellee.

**CROUSE, Judge.**

**{¶1}** In March 2023, the State of Ohio filed a criminal complaint against defendant-appellant Kimberly Hahaj alleging that, nearly two years earlier, she had committed gross neglect while turning a patient at her nursing-home job. Hahaj successfully moved to dismiss the complaint on the basis that the State's preindictment delay was unjustifiable and prejudicial. The State now appeals, arguing that the trial court erred in granting Hahaj's motion, because she failed to show prejudice. For the reasons set forth below, we agree with the State, and so reverse the judgment of the trial court and remand this cause for further proceedings.

## I. BACKGROUND

**{¶2}** According to the criminal complaint and probable-cause affidavit, Hahaj worked as a state-tested nursing assistant at Meadowbrook Care Center, a nursing home in Cincinnati, Ohio. The State alleged that, on May 18, 2021, Hahaj unsuccessfully attempted to turn a Meadowbrook resident without the aid of another staff member, in defiance of that resident's care sheet, which cautioned that such a procedure required two staff members. As a result, the resident fell from the bed and suffered bilateral femur fractures.

**{¶3}** This incident was reported to the Ohio Department of Health, which in turn referred the matter to the office of the Ohio Attorney General ("OAG") in September 2021. Lynnette Rodrigue, a special agent in the OAG's Medicaid Fraud Control Unit, was assigned to the case about a month later. Over the following ten months, Rodrigue gathered information, records, and other evidence concerning the incident—contacting the injured resident's family, soliciting records from Meadowbrook, and conducting interviews with Meadowbrook employees. When investigators reached out to obtain records from Meadowbrook in mid-2022, however,

2

the facility's new administration informed Rodrigue that much of the staff had turned over, that several potential witnesses were no longer employed by Meadowbrook, and that some of the records Rodrigue sought had been lost or deleted.

{¶4} Among the missing records were statements taken in the immediate aftermath of the May 2021 incident. Perhaps to make up for this loss, the facility took *new* statements from Hahaj and one other individual in 2022 regarding the incident the year prior. Because Rodrigue did not believe statements made a year after the fact would be useful, she discarded them.

{¶5} Before Rodrigue could close her investigation, her supervisor insisted she find and interview one of the nurses on duty during the incident. Despite Rodrigue's efforts, she was unable to locate this nurse. According to the trial court's findings, Rodrigue concluded her investigation on August 12, 2022, and submitted her referral to a team attorney for review in January 2023.[1]

{¶6} The State then filed its criminal complaint against Hahaj in the Hamilton County Municipal Court on March 30, 2023, charging her with gross patient neglect in violation of R.C. 2903.34(A)(2), a first-degree misdemeanor. In September, Hahaj moved to dismiss the charge, arguing that the State's preindictment delay had violated her rights under the Ohio and Federal Constitutions. The trial court held a hearing on the motion, during which Hahaj introduced two pieces of correspondence between Meadowbrook administrators and state investigators, both dating from June 2022, which suggested that certain witnesses were no longer reachable, and certain facility records no longer accessible. The State then called Rodrigue to the stand, who

---

[1] The transcript of the trial court's oral ruling records the trial judge as saying, "In January of 2022 [Rodrigue] submitted her referral to the team." However, it is clear from context that the judge simply misspoke, and that he meant January of 2023.

testified to her timeline and process—including her destruction of the 2022 statements.

{¶7} The trial court granted Hahaj's motion to dismiss in an oral ruling on December 15, 2023. Based on Hahaj's documentary evidence and Rodrigue's testimony, it held that the State's delay in filing the complaint "did cause actual prejudice," because evidence had been lost or destroyed. The trial court further held that the State's delay, especially the seven-month gap from the conclusion of Rodrigue's investigation in August 2022 to the filing of the criminal complaint in March 2023, "was not justifiable." The State timely appealed.

## II. DISMISSAL FOR PREINDICTMENT DELAY

{¶8} In its sole assignment of error, the State contends that "the trial court erred as a matter of law by dismissing the case due to preindictment delay." The State contends that Hahaj's evidence was "clearly insufficient to demonstrate actual prejudice."

### A. Standard of Review

{¶9} Neither this court nor the Ohio Supreme Court has set forth the standard for reviewing a trial court's decision to dismiss an indictment for preindictment delay.

{¶10} The State offers us no standard of review, while Hahaj contends that we review such rulings for an abuse of discretion, quoting the Eighth District's decision in *State v. Miller*, 2021-Ohio-1878, ¶ 23 (8th Dist.). *Miller* says that "'[d]ecisions to grant or deny a motion to dismiss on grounds of preindictment delay are reviewed for an abuse of discretion.'" *Id*. While *Miller* attributes this quote to *State v. Darmond*, 2013-Ohio-966, ¶ 33, *Darmond* says no such thing. In fact, *Darmond* says nothing at all about preindictment-delay dismissals, as that opinion addressed a trial court's

"discretion in determining a sanction for a discovery violation," up to and including dismissal. *Id.*[2]

**{¶11}** However, in the same paragraph, the *Miller* court also asserts that "'[c]ourts reviewing a decision on a motion to dismiss for pre-indictment delay accord deference to the lower court's findings of fact but engage in a de novo review of the lower court's application of those facts to the law.'" *See Miller* at ¶ 23, quoting *State v. Henley*, 2006-Ohio-2728, ¶ 8 (8th Dist.). Hahaj also quotes this standard in her brief.

**{¶12}** These two standards are mutually exclusive. De novo review requires a reviewing court to examine an issue afresh and to substitute its judgment for that of the tribunal below, should the two conflict. *Compare Hostiuck v. Gertz*, 1985 Ohio App. LEXIS 8305, *5 (1st Dist. July 10, 1985), quoting *Resek v. City of Seven Hills*, 9 Ohio App.3d 224, 226 (8th Dist. 1983) ("'In an appeal de novo . . . the reviewing court is free to substitute its judgment for that of the administrative tribunal.'"). By contrast, abuse-of-discretion review "*does not permit* an appellate court to simply substitute its judgment for that of the trial court." (Emphasis added.) *See Darmond* at ¶ 34. We thus cannot review the trial court's application of law to fact *both* de novo *and* for an abuse of discretion.

**{¶13}** Many opinions from our sister districts review preindictment-delay claims under Hahaj's second proposed standard—assessing legal and mixed questions de novo, while deferring to the trial court's factual findings. *See, e.g., State v. Buis*,

---

[2] We can trace the application of this abuse-of-discretion standard in the preindictment-delay context back to *State v. Jackson*, 2015-Ohio-4274, ¶ 3 (8th Dist.), in which the Eighth District declared, "Decisions to grant or deny a motion to dismiss on grounds of preindictment delay are reviewed for an abuse of discretion. *State v. Darmond*, [2013-Ohio-966], ¶ 33." Although the *Jackson* court cited the Ohio Supreme Court's opinion in *Darmond*, it never purported to quote it. Nevertheless, at least two of our sister districts mistakenly attributed this sentence in *Jackson* to the Supreme Court, and so held that preindictment-delay dismissals are reviewed for an abuse of discretion. *See, e.g., State v. Bost*, 2021-Ohio-2190, ¶ 28 (5th Dist.); *State v. Stevens*, 2023-Ohio-3280, ¶ 98 (4th Dist.).

2018-Ohio-1727, ¶ 10 (2d Dist.); *State v. Porter*, 2021-Ohio-2539, ¶ 7 (3d Dist.); *State v. Pinney*, 2021-Ohio-3483, ¶ 7 (11th Dist.). And many of these decisions further clarify what that factual deference should look like, by noting that a reviewing court should "accept a trial court's findings of fact if they are supported by competent, credible evidence." *See State v. Craig*, 2023-Ohio-1003, ¶ 16 (10th Dist.), citing *State v. McKinley*, 2020-Ohio-3664, ¶ 32 (8th Dist.); *see also, e.g., State v. Jabbar,* 2021-Ohio-1191, ¶ 19-20 (8th Dist.).

**{¶14}** While it is true that many decisions to dismiss an indictment are subject to abuse-of-discretion review, *see generally* 29 Ohio Jur.3d, Criminal Law: Procedure, § 2297 (2024), there are many indictment dismissals that are *not* discretionary. For example, a decision to dismiss an indictment on double-jeopardy grounds poses a pure question of law, which an appellate court considers de novo. *See, e.g., State v. Mutter*, 2017-Ohio-2928, ¶ 13. The same is true when a court dismisses an indictment because the charges are substantively unconstitutional. *See, e.g., State v. Thacker*, 2024-Ohio-5835, ¶ 7 (1st Dist.).

**{¶15}** Ohio courts have long reviewed dismissals for speedy-trial violations—which implicate many of the same issues raised by preindictment-delay claims—as "mixed question[s] of fact and law," requiring the appellate court to "employ a de novo standard of review, to determine whether the facts satisfy the applicable legal standard," while "giv[ing] due weight to the inferences drawn from the facts found by the trial court as long as they are supported by competent, credible evidence." *See State v. Rice*, 2015-Ohio-5481, ¶ 15 (1st Dist.); *accord State v. Long*, 2020-Ohio-5363, ¶ 15.

**{¶16}** Given the similar questions and challenges inherent in resolving speedy-trial and preindictment-delay claims, as well as the similar interests the two

rights protect, we join our sister districts who have held that the standard of review applied in the speedy-trial context applies here as well. To accept the Eighth District's contrary abuse-of-discretion standard would imply that a trial court had "discretion" either to define what process a criminal defendant is due, or to permit a concededly unconstitutional prosecution to proceed. Neither of these would be consistent with the constitutional guarantees enshrined in the Due Process and Due Course of Law Clauses.

{¶17} We therefore review de novo the trial court's legal determinations regarding Hahaj's motion to dismiss the complaint for preindictment delay, as well as its application of those legal standards to the facts before it. At the same time, we defer to the trial court's underlying factual determinations and inferences, so long as those findings and inferences were supported by competent, credible evidence.

### *B. Merits*

{¶18} The Sixth Amendment to the United States Constitution guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." Likewise, Article I, Section 10 of the Ohio Constitution guarantees that, "[i]n any trial, in any court, the party accused shall be allowed . . . to have . . . a speedy public trial by an impartial jury." While these speedy-trial provisions guard against extended delays between indictment and trial, they "afford no protection to those not yet accused." *See United States v. Marion*, 404 U.S. 307, 313 (1971) (under U.S. Const., amend. VI); *State v. Luck*, 15 Ohio St.3d 150, 152-153 (1984) (under Ohio Const., art. I, § 10). Instead, "[s]tatutes of limitations provide the ultimate time limit within which the government must prosecute a defendant—a definite point 'beyond which there is an irrebuttable presumption that a defendant's right to a fair trial would be prejudiced.'" *State v. Jones*, 2016-Ohio-5105, ¶ 11, quoting *Marion* at 322.

**{¶19}** However, "when unjustifiable preindictment delay causes actual prejudice to a defendant's right to a fair trial *despite* the state's initiation of prosecution within the statutorily defined limitations period," both the Federal Constitution's Due Process Clause and the Ohio Constitution's Due Course of Law Clause provide a backstop. (Emphasis added.) *Jones* at ¶ 11-12. The State's delay in filing charges violates a criminal defendant's rights under these provisions "only when it [1] is unjustifiable and [2] causes actual prejudice." *Id.* at ¶ 12; *accord Luck* at paragraph two of the syllabus.

**{¶20}** To adjudicate such preindictment-delay claims, Ohio courts have "firmly established a burden-shifting framework." *Jones* at ¶ 13. First, the defendant must present evidence that the State's delay has caused "actual prejudice" to the defense, as even "unjustifiable delay does not violate due process unless it results in actual prejudice." *Id.* at ¶ 13 and 16. But once the defendant has shown prejudice, "the burden shifts to the state to produce evidence of a justifiable reason for the delay." *Id.* at ¶ 13, citing *State v. Whiting,* 84 Ohio St.3d 215, 217 (1998).

**{¶21}** Determining whether a defendant has experienced "actual prejudice" from a delay "involves a delicate judgment and a case-by-case consideration of the particular circumstances." (Cleaned up.) *Jones*, 2016-Ohio-5105, at ¶ 20. Unlike in the speedy-trial context, "no presumption of prejudice arises in the due-process context when a preindictment delay exceeds a particular length of time." *State v. Adams*, 2015-Ohio-3954, ¶ 98, citing *United States v. Schaffer*, 586 F.3d 414, 425 (6th Cir. 2009). Thus, the Ohio Supreme Court has cautioned that the "burden upon a defendant seeking to prove preindictment delay violated due process is nearly insurmountable, especially because proof of prejudice is always speculative." (Cleaned up.) *Id.* at ¶ 100.

8

**{¶22}** In this case, Hahaj contends that the State's preindictment delay caused her to suffer actual prejudice because "evidence was lost and witnesses could not be located." Ordinarily, the mere "possibility that memories will fade, witnesses will become inaccessible, or evidence will be lost is not sufficient to establish actual prejudice." *Id.* at ¶ 105. But that "does not mean . . . that demonstrably faded memories and actually unavailable witnesses or lost evidence cannot satisfy the actual-prejudice requirement." *Jones* at ¶ 21. Such losses become prejudicial where particular lost evidence "would minimize or eliminate the impact of the state's evidence and bolster the defense." *Id.* at ¶ 28, citing *Luck*, 150 Ohio St.3d at 157-158.

**{¶23}** So, how can a defendant show she was prejudiced by the loss of evidence she never had? On the one hand, we know she must do more than simply point to evidence lost because of delay. *See Adams* at ¶ 103 (holding that death of possible witness was not prejudicial unless "the defendant can identify exculpatory evidence that was lost and show that the exculpatory evidence could not be obtained by other means"). But on the other, she "need not know what the exact substance of an unavailable witness's testimony would have been in order to establish actual prejudice." *Jones* at ¶ 28. Rather, to show that evidentiary loss or degradation prejudiced her defense, a defendant must identify with specificity both (1) *what* "missing evidence or unavailable testimony" the State's delay deprived her of, and (2) *how* that missing evidence, if she had it, "would minimize or eliminate the impact of the state's evidence and bolster the defense"—even if she cannot prove exactly what that evidence or testimony would have disclosed. *Id.*, citing *Luck*, 150 Ohio St.3d at 157-158.

**{¶24}** Hahaj's primary evidence of prejudice consists of two documents obtained from the State in discovery. The first document is a June 2022 letter from an

administrator at Meadowbrook, detailing how changes in administration at the facility had "negatively impacted [their] search for the requested items." These negative impacts included the loss of statements made by individuals near the date of the incident and the departure of the nurses on duty during the incident from Meadowbrook. The second document is a June 2022 email, addressed directly to Rodrigue, which contained representations from an individual named "Alexandra" that Meadowbrook's "oncall service" did not keep records dating "that far back into 2021." In addition to these documents, Hahaj points to Rodrigue's testimony at the hearing, during which the investigator disclosed that she had been given statements during her investigation (one from Hahaj and one from another individual), only to discard those statements before the State filed charges.

{¶25} The complaint alleged that Hahaj improperly performed a multi-person turn on her own, and thereby "knowingly fail[ed] to provide" her patient with "treatment, care, goods, or service that is necessary to maintain . . . health or safety . . . result[ing] in serious physical harm." *See* R.C. 2903.33(C)(1) (defining "gross neglect" as used in R.C. 2903.34). Hahaj argues that the State's "delay prevented the defense from obtaining any records from the facility and caused critical witnesses to become unavailable." But this fails to address key questions: *How* would those records have benefitted her defense? *Why* were those witnesses "critical"? *What* might any of the evidence or testimony have *said*?

{¶26} Hahaj was not required to show that the lost evidence would have proven her innocent or been "directly exculpatory." *See Jones*, 2016-Ohio-5105, at ¶ 27. Nor was she necessarily required to "articulate specifically" the contents of the missing records or unavailable testimony. *Id.* at ¶ 28. But Hahaj was required to tender *some* explanation of how the longed-for records and testimony would have bolstered

her defense—and why she could not have obtained comparable evidence by other means. *See Adams*, 2015-Ohio-3954, at ¶ 103; *accord Jones* at ¶ 28.

**{¶27}** Hahaj further suggests that Rodrigue's decision to destroy the 2022 statements constituted "manipulation of the record in favor of the prosecution," and thus "shows actual prejudice." But preindictment-delay claims concern the natural consequences that flow from unreasonably belated charges—not the manipulation of evidence by the prosecution. *Compare Brady v. Maryland*, 373 U.S. 83 (1963); *Napue v. Illinois*, 360 U.S. 264 (1959). And, to the extent the deliberate character of the State's actions is relevant here, it goes not to the issue of *prejudice*, but to the *reasonableness of the delay*. *See Jones* at ¶ 18 ("By considering the reasons for the state's delay before independently determining whether Jones established actual prejudice because of that delay, the Eighth District majority erred."). Thus, for Hahaj to prevail on her evidentiary-destruction claim—if such a claim were cognizable under *Marion* and *Luck*—she would still have needed to explain how that destruction prejudiced her.

**{¶28}** Even accepting the trial court's implicit factual conclusion, i.e., that some records were lost and some witnesses rendered unavailable because of the delay, Hahaj failed to adequately demonstrate or explain how any of that lost evidence would have materially contributed to her defense. In essence, the court below erred in equating the loss of records and unavailability of witnesses with proof of actual prejudice. But "[a]ctual prejudice exists" only if that "missing evidence or unavailable testimony" could "minimize or eliminate the impact of the state's evidence and bolster the defense." *Jones* at ¶ 28. Because Hahaj has offered no explanation of what the lost statements and unavailable witness would have disclosed, or of how those disclosures would have aided her case, she has failed to show actual prejudice. And because Ohio's

burden-shifting regime did not require the State to justify its delay until Hahaj had shown prejudice, we do not address the reasonableness of the State's delay.

**{¶29}** In sum, we hold that Hahaj did not offer evidence sufficient to satisfy the actual-prejudice standard, as defined in *Luck* and its progeny. The State's sole assignment of error is therefore sustained, the judgment of the trial court dismissing the charge is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Judgment reversed and cause remanded.

**BERGERON, P.J.,** and **WINKLER, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.