[Cite as *State v. Yoder*, 2025-Ohio-1633.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|                         |   |                                    |
|-------------------------|---|------------------------------------|
| STATE OF OHIO,          | : | APPEAL NO.  C-240152               |
|                         |   | TRIAL NO.   B-2201028              |
| Plaintiff-Appellee,     | : |                                    |
|                         |   |                                    |
| vs.                     | : |                                    |
|                         |   | *JUDGMENT ENTRY*                   |
| JAMES YODER,            | : |                                    |
|                         |   |                                    |
| Defendant-Appellant.    | : |                                    |

This cause was heard upon the appeal, the record, the briefs, and arguments.

The judgment of the trial court is affirmed for the reasons set forth in the Opinion filed this date.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs are taxed under App.R. 24.

The court further orders that 1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and 2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 5/7/2025 per order of the court.**

**By:**_____
      **Administrative Judge**

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

STATE OF OHIO,                          :          APPEAL NO.    C-240152
                                                   TRIAL NO.     B-2201028
      Plaintiff-Appellee,          :

  vs.                                   :

                                                          *O P I N I O N*
JAMES YODER,                            :

      Defendant-Appellant.         :


Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: May 7, 2025


*Connie M. Pillich*, Hamilton County Prosecuting Attorney, and *Scott Heenan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Angela J. Glaser* for Defendant-Appellant.

**NESTOR, Judge.**

**{¶1}** Defendant-appellant James Yoder asserts four assignments of error in this appeal of his convictions for rape, felonious assault and kidnapping. First, we hold that the pre-indictment delay was justified by the State, and as a result there was no violation of Mr. Yoder's due process right to a speedy trial.

**{¶2}** Second, we hold there was no abuse of discretion when the trial court overruled Mr. Yoder's motion for a new trial based on a post-trial competency evaluation.

**{¶3}** Third, we conclude that the rape and felonious assault convictions do not merge because there was a separately identifiable injury for each conviction.

**{¶4}** Finally, on review of the entire record, we hold that there was sufficient evidence for the rape convictions and that the convictions were not against the manifest weight of the evidence.

**{¶5}** After reviewing both the law and record, we overrule each assignment of error and affirm the convictions.

### I. Factual and Procedural History

**{¶6}** A.P., the victim in this case, experienced homelessness on-and-off for about 16 years in and around Cincinnati. A.P. lived at a homeless camp, consisting of three tents in a wooded area underneath the Sixth Street Viaduct. Following an earlier assault, A.P. was forced to have her leg amputated in early 2019. On July 21, 2019, A.P. returned to the camp from her rehabilitation center to show off her new prosthetic leg and "hang out" with her ex-boyfriend, her cousin, and Mr. Yoder, all individuals living under the viaduct.

**{¶7}** A.P. testified at trial that at some point, her ex-boyfriend left to get the group more beer, and an attack ensued. Suddenly, as A.P. spoke with her cousin she

felt something around her neck. Mr. Yoder came up from behind A.P., put a rope around her neck, and quickly pulled her out of her chair.

{¶8} Mr. Yoder dragged her away, tied her to a tree, and began striking her in the face. A.P. testified that she then lost consciousness. Once she came to, she was undressed, and Mr. Yoder was raping her. Attempting to alert someone, she screamed, but Mr. Yoder threatened to pull the rope tighter. A.P. testified that at this point she lost consciousness a second time and when she regained it, Mr. Yoder was raping her again. She testified that the attack lasted throughout the night.

{¶9} Mr. Yoder continued to hit her and at one point pulled her closer to his tent, where the violence continued. Once A.P. believed Mr. Yoder had fallen asleep, she tried to inch away from him, but he quickly pulled her back to his bed in the tent. Anticipating more harm from Mr. Yoder, A.P. then tried to block him with her legs, but he forced them apart and broke her hip as a result. The next morning, A.P. called 9-1-1, reported the rape, and identified James Yoder as the perpetrator.

{¶10} On March 10, 2022, Mr. Yoder was indicted on four counts of rape and one count each of felonious assault and kidnapping. Before trial, he filed a motion to dismiss the indictment, alleging that his pre-trial right to a speedy trial was violated by the delay between the event and indictment. After a brief hearing, the motion was denied. At trial, he successfully moved for acquittals under Crim.R. 29 on two of the four rape counts, which alleged anal rape, but the jury found him guilty of the remaining counts.

{¶11} In the days leading up to Mr. Yoder's sentencing hearing, he filed a motion for a continuance to get a competency evaluation, which the court granted. On August 10, 2023, he was found incompetent, and the trial court eventually authorized the involuntary administration of medication. Later, in December 2023, Mr. Yoder

was determined to be competent for the purpose of sentencing.

**{¶12}** In early 2024, the court denied both Mr. Yoder's motion for acquittal and motion for a new trial. As to the latter motion, the court provided a lengthy explanation that concluded he was competent during the trial. On February 20, 2024, Mr. Yoder was sentenced to an indefinite aggregate prison term of 26 to 31 years and he was classified as a Tier III sex offender.

**{¶13}** Now raising four assignments of error, he appeals.

## II. Analysis

### A. First Assignment of Error

**{¶14}** In his first assignment of error, Mr. Yoder argues that the State's 31-month delay in indicting him was constitutionally unreasonable and violated his right to a speedy trial. However, his position is unfounded in both United States and Ohio law.

**{¶15}** Review of a trial court's decision on a motion to dismiss based on a violation of a defendant's speedy-trial rights involves a mixed question of fact and law. *State v. Rice*, 2015-Ohio-5481, ¶ 15 (1st Dist.). "We give due weight to the inferences drawn from the facts found by the trial court as long as they are supported by competent, credible evidence." *Id.* Additionally, "[w]ith respect to the trial court's conclusions of law, we employ a de novo standard of review, to determine whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. Terrell*, 2003-Ohio-3044, ¶ 17 (1st Dist.).

**{¶16}** Our analysis begins with the applicable statute of limitations and, as the State argues, the 31-month delay was not outside the statute of limitations for any of

5

Mr. Yoder's charges.[1] As the Supreme Court held in *United States v. Lovasco*, "statutes of limitations, which provide predictable, legislatively enacted limits on prosecutorial delay, provide "'the primary guarantee against bringing overly stale criminal charges.'"" *United States v. Lovasco*, 431 U.S. 783, 789 (1977), quoting *United States v. Marion*, 404 U.S. 307, 322 (1971), quoting *United States v. Ewell*, 383 U.S. 116, 122 (1966). However, the Court also explained that statutes of limitations do not fully define a defendant's rights regarding the events occurring prior to indictment and "the Due Process clause has a limited role to play in protecting against oppressive delay." *Marion* at 324.

{¶17} In this case, the State asserts that the 31-month delay from the time of the alleged crimes was due to a reasonable investigative delay, based in part on the victim's unwillingness to pursue charges. In *Lovasco,* the Supreme Court stated "investigative delay is fundamentally unlike delay undertaken by the Government solely 'to gain tactical advantage over the accused,' . . . precisely because investigative delay is not so one-sided." *Lovasco* at 795, quoting *Marion* at 324. Also, "[r]ather than deviating from elementary standards of 'fair play and decency,' a prosecutor abides by them if he refuses to seek indictments until he is completely satisfied that he should prosecute and will be able promptly to establish guilt beyond a reasonable doubt." *Id.* The Court concluded that "prosecut[ing] a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time." *Id.* at 796.

{¶18} The Supreme Court observed "that proof of prejudice is generally a

---

[1] Pursuant to R.C. 2901.13, which outlines the statute of limitations for criminal offenses, the statute of limitations for R.C. 2907.02 (rape), R.C. 2903.11 (felonious assault), and R.C. 2905.01 (kidnapping) is 20 years at minimum.

necessary but not sufficient element of a due process claim, and that the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." *Lovasco* at 790. This idea ties directly into pre-indictment delay jurisprudence in Ohio.

{¶19} For pre-indictment delay to be violative of one's due process rights, there must be a showing of actual prejudice to the defendant, but that alone does not validate the claim. *State v. Luck*, 15 Ohio St.3d 150, 153-154 (1984), citing *Lovasco*, 431 U.S. at 789-790. The Ohio Supreme Court in *Luck* outlined a two-prong test to determine if a pre indictment delay violates one's due process rights. "First, the defendant must present evidence that the State's delay has caused 'actual prejudice.'" *State v. Hahaj*, 2025-Ohio-52, ¶ 20 (1st Dist.), citing *State v. Jones*, 2016-Ohio-5105, ¶ 13 and 16. Upon such a showing, "'the burden shifts to the state to produce evidence of a justifiable reason for the delay.'" *Id.*, quoting *Jones* at ¶ 13, citing *State v. Whiting*, 84 Ohio St.3d 215, 217 (1998). We have also previously noted that "[d]etermining whether a defendant has experienced 'actual prejudice' from a delay 'involves a delicate judgment and a case-by-case consideration of the particular circumstances'" leading to a burden for defendants that is nearly insurmountable. *Id.* at ¶ 21, quoting *Jones* at ¶ 20, and *State v. Adams*, 2015-Ohio-3954, ¶ 100. This court held that the burden is that high because "'proof of prejudice is always speculative.'" *Id.*, quoting *Adams* at ¶ 100.

{¶20} While the trial court found that there was actual prejudice, a court could have found otherwise. As the Ohio Supreme Court explained, "'[a]ctual prejudice exists when missing evidence or unavailable testimony, identified by the defendant and relevant to the defense, would minimize or eliminate the impact of the state's evidence and bolster the defense.'" *State v. Bourn*, 2022-Ohio-4321, ¶ 17, quoting

*Jones* at ¶ 28. The Court explained that the "word 'would' in the *Jones* decision, is significant." *Id.* "It is not enough for a defendant to show that [] missing evidence or unavailable testimony 'could' or 'may' help [them,] [i]nstead, [they] must show that the evidence or testimony *would* help [them]." (Emphasis in original.) *Id.* Also, we have held that "[o]rdinarily, the mere 'possibility that memories will fade, witnesses will become inaccessible, or evidence will be lost is not sufficient to establish actual prejudice.'" *Hahaj* at ¶ 22, quoting *Adams* at ¶ 105. In this case, Mr. Yoder's argument is based on the inability to contact and interview witnesses such as Mr. Worden, A.P.'s cousin, or the two bystanders who were allegedly nearby as the events took place. Mr. Yoder also asserts there was no opportunity to thoroughly investigate the crime scene because almost two years after the event, it was virtually impossible to access. His last assertion was that the responding officer's body-worn camera had been deleted, and therefore, important witness statements were not available. But again, there is no *guarantee* that any of this would have weakened the State's case whatsoever, rather, only speculation that it might have.

{¶21} Regardless, deferring to the trial court's actual prejudice finding, the delay was justifiable and therefore the second prong of the *Luck* test is met. As the State explained, even though the detective who investigated the case made several attempts to interview A.P. in 2019, she was unsuccessful. Also, A.P. was in a rehabilitation facility for the injuries she suffered from the attack. Further, both A.P. and the Cincinnati Police personal crimes detective explained A.P. was reluctant to press charges because she feared for her safety. She testified that Mr. Yoder threatened her with additional violence during the attack. She said that he threatened to break "every bone" in her body after what had happened to her hip and that he told another individual that he would not only rape her again, but that she was "lucky" that

8

all he did was rape her because he could have killed her. This all made A.P. fearful of Mr. Yoder and scared of what he might do to her in the future.

**{¶22}** A.P. explained that once Mr. Yoder was incarcerated on other charges in 2021, she felt safe enough to be interviewed by the detective. To make matters worse, she claimed that Mr. Yoder continued to call and threaten her while in the Justice Center and he even sent A.P. a disturbing letter.

**{¶23}** Because of A.P.'s significant injuries, the fear she continued to experience, and the State's inability to move forward with the case without the victim's participation, the delay was justifiable. Therefore, Mr. Yoder's first assignment of error is overruled.

### B. Second Assignment of Error

**{¶24}** In his second assignment of error, Mr. Yoder argues that the trial court abused its discretion in overruling his motion for a new trial. A court abuses its discretion when "'[it] exercise[es] its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority.'" *Mallory v. Mallory*, 2024-Ohio-5458, ¶ 13 (1st Dist.), quoting *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

**{¶25}** Mr. Yoder relies on Crim.R. 33(A) as the grounds for his argument that he should be granted a new trial. As we previously held in *State v. Blanton*, "Crim.R. 33(A)(6) permits motions for new trials based on newly discovered evidence that the defendant could not have with reasonable diligence discovered and produced at trial." *State v. Blanton*, 2025-Ohio-1192, ¶ 66 (1st Dist.). To prevail on such a motion, "a defendant must establish that newly discovered evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) could not have been discovered in the exercise of due diligence before trial, (4) is material, (5) is not merely cumulative to the former

evidence, and (6) does not merely impeach or contradict the former evidence." *Id*. at ¶ 67, citing *State v. Petro*, 148 Ohio St. 505 (1947), syllabus.

**{¶26}** Mr. Yoder argues that his motion for a new trial should have been granted based on the competency evaluation that was produced after trial and before sentencing. The trial court requested the competency evaluation at the conclusion of the trial. The competency report tends to support the conclusion that Mr. Yoder was not receiving his medication during trial, but the report does not conclude that Mr. Yoder was not competent during trial.

**{¶27}** There is a presumption, focusing on a defendant's *present* mental state, that he is competent to stand trial. R.C. 2945.37(G). If the court finds by a preponderance of the evidence, after a hearing, "that, because of the defendant's present mental condition, the defendant is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense, the court shall find the defendant incompetent to stand trial and shall enter an order authorized by section 2945.38 of the Revised Code." *Id*. While Mr. Yoder's arguments that he was incompetent focus on his outbursts at trial and the bizarre things he said and did during the trial, on review of the record we conclude that the trial court did not abuse it discretion when it overruled the motion for a new trial.

**{¶28}** As the trial court explained, Mr. Yoder's outbursts were calculated responses to adverse events at trial. Mr. Yoder behaved during most of the trial, but both of his major outbursts came when he tried to fire his attorneys because he did not believe they were doing a good enough job. Moreover, neither the court nor Mr. Yoder's attorneys ever brought his competency into question during the trial or requested an evaluation during any part of the proceeding until two days before sentencing. This, the trial court believed, showed that there were no questions as to

his competency and that his trial outbursts were last-ditch efforts to change an undesirable trial outcome. The competency evaluation received after trial did not conclude that Mr. Yoder was not competent during the trial. Based on the evaluation received and the trial court's assessment of Mr. Yoder's behavior at trial, we are unable to conclude that the trial court erred in denying his motion for a new trial.

{¶29} The court did not abuse its discretion in overruling his motion for a new trial. Accordingly, his second assignment of error is overruled.

### C. Third Assignment of Error

{¶30} In Mr. Yoder's next assignment of error, he contends that the trial court should have merged the rape and felonious assault counts for sentencing.

{¶31} We review a trial court's decision regarding allied offenses de novo. *State v. Williams*, 2012-Ohio-5699, ¶ 28. "Under R.C. 2941.25[(A)], while a defendant may be charged with multiple counts that constitute 'two or more allied offenses of similar import,' the defendant may only be 'convicted' of one offense." *State v. Smith*, 2020-Ohio-3516, ¶ 7 (1st Dist.), quoting *State v. Chandler*, 2020-Ohio-1371, ¶ 5 (1st Dist.). However, when "'the defendant's conduct constitutes two or more offenses of dissimilar import, or where [the defendant's] conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each,' a defendant may be convicted of all such offenses." *Id.*, citing R.C. 2941.25(B), and *State v. McRae*, 2020-Ohio-773, ¶ 21 (1st Dist.). The Ohio Supreme Court held that "offenses cannot merge if '(1) the offenses are dissimilar in import or significance—in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation.'" *Id.*, quoting *State v. Ruff*, 2015-Ohio-995, ¶ 25.

{¶32} An important aspect of our analysis is the separate and identifiable

11

harms caused by Mr. Yoder. Although Mr. Yoder argues, focusing only on the broken hip suffered by A.P., that his actions constitute the same conduct, animus, and import, this is undermined by the record and A.P.'s injuries. In *State v. Zeigler*, the defendant maintained that the felonious assault, rape, and aggravated burglary offenses should have merged as allied offenses. *State v. Zeigler*, 2017-Ohio-7673 (1st Dist.). In that case, the defendant's forcing the victim to ingest chemical substances and her vomiting blood as a result, supported the physical harm element of felonious assault, while alternatively his forcing her to ingest Motrin despite her protests that she was allergic to it constituted separate conduct supporting the physical harm element of aggravated burglary. *Id.* at ¶ 26. Additionally, the defendant's oral and vaginal penetration constituted separate conduct supporting the rape offense but not the other offenses. *Id.* at ¶ 25 and 26. Because each offense was committed separately, the court held that they were not allied offenses of similar import.

**{¶33}** Further, we have held that placing a victim into a chokehold and dragging her to a secluded area, even if a short distance, subjected the victim to an additional, increased risk of harm beyond the rape itself, justifying convictions for both rape and kidnapping. *State v. Savage,* 2022-Ohio-3653, ¶ 32 (1st Dist.). In *State v. Ward*, the court found separate and identifiable harm justifying convictions for felonious assault and rape where the defendant engaged in sexual conduct with a child and did so while knowingly testing positive for HIV. *State v. Ward*, 2021-Ohio-1930, ¶ 8 (3d Dist.).

**{¶34}** Here, Mr. Yoder's acts caused separate and identifiable harms to A.P. Mr. Yoder was convicted of both felonious assault under R.C. 2903.11(A) and rape under R.C. 2907.02(A)(2). Under R.C. 2903.11, a defendant must knowingly cause "serious physical harm to another," and R.C. 2907.02 provides that "[n]o person shall

engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." The felonious assault conviction resulted from the evidence and testimony provided which showed that Mr. Yoder caused serious physical harm to A.P. Separate and apart from the rape, A.P. suffered a broken hip and a battered face, and she was dragged by a rope around her neck. A.P. testified at trial that in addition to her broken hip, she also had a broken nose and jaw. While these injuries happened around the same time as the rape, the evidence supports the conclusion that each injury was a separate identifiable harm.

**{¶35}** Mr. Yoder's felonious assault and rape convictions were for separate identifiable harms and the trial court properly did not merge them as allied offenses. Accordingly, Mr. Yoder's third assignment of error is overruled.

### D. *Fourth Assignment of Error*

**{¶36}** In his final assignment of error, Mr. Yoder argues that his rape convictions are based on insufficient evidence and are against the manifest weight of the evidence. "To determine whether a conviction is supported by sufficient evidence, we inquire 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Trentman*, 2024-Ohio-5661, ¶ 20 (1st Dist.), quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. Under R.C. 2907.02(A)(2), "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."

**{¶37}** The record provides evidence that Mr. Yoder raped A.P. and violated R.C. 2907.02. First, A.P. identified Mr. Yoder as the man who raped her as she phoned 9-1-1 immediately afterwards. Moreover, she testified that Mr. Yoder raped her

multiple times on that night, as he dragged her, using a rope, by her neck to different areas of the camp. She explained that at one point she tried to scream and he hit her and said if she screamed again he would pull the rope tighter. All her testimony was further corroborated by the rape-kit swabs revealing Mr. Yoder's seminal DNA found on her body.

**{¶38}** Based on this evidence, the record strongly supports that Mr. Yoder forced A.P. to engage in penetrative sex by force. Thus, a rational trier of fact could have found the essential elements of R.C. 2907.02(A)(2) proven beyond a reasonable doubt

**{¶39}** A manifest-weight review, on the other hand, "requires this court to sit as a 'thirteenth-juror.'" *State v. Jackson*, 2024-Ohio-2728, ¶ 9 (1st Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 388 (1997). "We review the record, consider witness credibility, and determine if the 'trier of fact clearly lost its way and created a manifest miscarriage of justice.'" *Id.*, quoting *State v. Powell*, 2020-Ohio-4283, ¶ 16 (1st Dist.), citing *Thompkins* at 387. Moreover, "we will reverse the trial court's decision to convict and grant a new trial only in "'exceptional cases in which the evidence weighs heavily against the conviction.'"" *State v. Kizilkaya*, 2023-Ohio-3989, ¶ 15 (1st Dist.), quoting *State v. Sipple*, 2021-Ohio-1319, ¶ 7, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

**{¶40}** Upon reviewing the record, we hold that Mr. Yoder's convictions were not against the manifest weight of the evidence. The record contains (1) A.P.'s testimony that Mr. Yoder raped her more than once on the evening in question, (2) the 9-1-1 call where she identified him as the perpetrator, and (3) A.P.'s rape-kit, which confirmed that his DNA was found on many parts of A.P.'s body.

**{¶41}** Furthermore, "a jury is in the best position to judge the credibility of the

witnesses." *State v. Grubbs*, 2025-Ohio-1384, ¶ 96 (1st Dist.), citing *State v. Hall*, 2021-Ohio-3121, ¶ 44 (1st Dist.). "The jury [is] entitled to weigh the evidence, consider the motivations of the witnesses, and choose to believe all, part, or none of the testimony offered." *Id.*, citing *Hall* at ¶ 44. A.P. was the primary witness in this case. After hearing the entirety of the evidence, the jury was entitled to believe or disbelieve A.P., and it chose to believe her. The record lacks evidence that weighs heavily against Mr. Yoder's convictions. These convictions are not the "exceptional cases warranting" reversal, and therefore, Mr. Yoder's fourth assignment of error is overruled.

### III.    Conclusion

**{¶42}** Based on the foregoing, we overrule all of Mr. Yoder's assignments of error and we affirm the trial court's judgment.

Judgment affirmed.

**CROUSE, P.J.,** and **MOORE, J.,** concur.